1

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
MICHAEL R. VELLADAO, SB# 110075

2
    Email: Michael.Velladao@lewisbrisbois.com
MONICA M. KALUNIAN, SB# 251769

3
    Email: Monica.Kalunian@lewisbrisbois.com
633 West 5th Street, Suite 4000

4
Los Angeles, California 90071
Telephone:    213.250.1800

5
Facsimile:    213.250.7900

6
ROGER S. RAPHAEL, SB# 111946
    Email: Roger.Raphael@lewisbrisbois.com

7
45 Fremont Street, Suite 3000
San Francisco, California 94105

8
Telephone:    415.362.2580
Facsimile:    415.434.0882

9
Attorneys for Plaintiff STATE NATIONAL INSURANCE COMPANY, INC.

10
UNITED STATES DISTRICT COURT

11
NORTHERN DISTRICT OF CALIFORNIA, OAKLAND  DIVISION

12

13
STATE NATIONAL INSURANCE COMPANY, INC.,

CASE NO.

14
                    Plaintiff,

**COMPLAINT    FOR    DECLARATORY
RELIEF**

15

16
            vs.

17
THE    BADELLE    GROUP,    INC.;        BRETT
BADELLE; and MAHMOUD BERTE,

18
                    Defendants.

19

20
        **COMES NOW** plaintiff STATE NATIONAL INSURANCE COMPANY, INC. ("STATE

21
NATIONAL") and files the following Complaint against Defendants THE BADELLE GROUP,

22
INC. and BRETT BADELLE (collectively referred to as "BADELLE" unless the context otherwise

23
indicates) and MAHMOUD BERTE ("BERTE").

24
                                **PARTIES**

25
        1.        At all times mentioned, STATE NATIONAL was a Texas Corporation with its

26
principal place of business in the State of Texas.

27
/ / /

28
/ / /

2.     STATE NATIONAL is informed and believes and based thereon alleges that THE BADELLE GROUP, INC.  is a California Corporation with its principal place of business in Oakland, California.

3.     STATE NATIONAL is informed and believes and based thereon alleges that Defendant BRETT BADELLE is an individual residing in Oakland, California.

4.     STATE NATIONAL is informed and believes and based thereon alleges that Defendant MAHMOUD BERTE is an individual residing in San Francisco, California.

**JURISDICTION AND VENUE**

5.     This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446.  Specifically, this Court has federal diversity jurisdiction pursuant to § 1332 because: (1) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (2) there is complete diversity between Plaintiff STATE NATIONAL on the one hand, and Defendants THE BADELLE GROUP, INC., BADELLE and BERTE on the other.

6.     Venue is proper in this District under 28 U.S.C. § 1391 because defendants reside in this District, a substantial part of the events or giving rise to this action occurred in this District, and because the UNDERLYING ACTION (defined below) is pending in this District.

**FACTUAL ALLEGATIONS**

7.     On or about April 5, 2021, BADELLE submitted an Application for liability insurance from STATE NATIONAL by completing an online form. The Application informed BADELLE that certain activities, including "firearms" and "physical or verbal violence" would be excluded from the policy, and asked BADELLE to acknowledge that they would not be covered for such activities. BADELLE responded that "I understand." A true and correct copy of the Application is attached as Exhibit A and is incorporated herein by reference.

8.     In reliance on the Application, on or about April 5, 2021 STATE NATIONAL issued policy number NXTBF5S45G-00-GL, effective April 5, 2021 to April 5, 2022 (the "POLICY"). The POLICY provides Commercial General Liability coverage to BADELLE in the amount of $1 million per occurrence and $2 million in the aggregate, subject to certain terms, conditions and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

exclusions, as more fully set forth below. A true and correct copy of the POLICY is attached as Exhibit B and is incorporated herein by reference.

9.      On December 8, 2021, Defendant BERTE filed Action No. 21CV003753 in Alameda County Superior Court, naming BADELLE and others as defendants (the "UNDERLYING ACTION"). A true and correct copy of BERTE's original Complaint in the UNDERLYING ACTION is  attached as Exhibit C and is incorporated by reference.

10.      In the UNDERLYING ACTION, BERTE seeks to recover damages from BADELLE and others, arising from an alleged incident occurring on April 21, 2021, at the Gallery Art Bar, a property that BERTE contends was leased or managed by BADELLE. BERTE alleges that while he was a patron of the Gallery Art Bar, he was shot approximately ten times by an assailant, named as a DOE in the UNDERLYING ACTION, whom BERTE alleges was another patron of the Gallery Art Bar. BERTE alleges that he sustained serious personal injuries as a result of the shooting.

11.      The defense of BADELLE was tendered to STATE NATIONAL.

12.      On January 26, 2022, STATE NATIONAL denied a defense to BADELLE of the UNDERLYING ACTION, based on the allegations of the original Complaint therein. A true and correct copy of STATE NATIONAL's denial letter is attached hereto as Exhibit D.

13.      On September 8, 2022 BERTE filed a First Amended Complaint ("FAC"). The FAC is the currently operative complaint in the UNDERLYING ACTION. A true and correct copy of the FAC is  attached as Exhibit E and is incorporated by reference.

14.      Based on certain allegations of the FAC that were not present in the original Complaint, On October 3, 2022 and October 20, 2022, STATE NATIONAL reasserted its coverage position and agreed to defend BADELLE in the UNDERLYING ACTION, going forward from the filing date of the FAC, subject to a full and complete reservation of rights. True and correct copies of STATE NATIONAL's reservation of rights letter dated October 3 and supplemental letter dated October 20 are attached as Exhibits  F and G, respectively, and are incorporated by reference.

15.       STATE NATIONAL is currently defending BADELLE in the UNDERLYING ACTION under a full reservation of rights.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

/ / /

16.    STATE NATIONAL seeks a declaration that it has no obligation to defend or indemnify BADELLE in the Underlying Action.

17.    The POLICY provides in pertinent part as follows:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a**. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages… .

18.    The POLICY also includes certain exclusions to coverage, including without limitation the following:

**2. Exclusions**

This insurance does not apply to:…

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

    **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

    **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

    **(a)** Requires a license;

    **(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises[1].

The foregoing exclusion is referred to herein as the "Liquor Liability Exclusion."

    19.    By endorsement, the POLICY add the following exclusion to coverage:

**Assault and Battery**

"Bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery."

This exclusion applies regardless of the degree of culpability or intent and without regard to:

**(1)** Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly:

    **(a)** At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants;

    **(b)** By the insured's customers, patrons, or guests;

    **(c)** By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or

    **(d)** By any other person or entity, by any means or cause whatsoever;

---

[1] The text of Exclusion c. as set forth herein is amended by an endorsement to the POLICY.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR DECLARATORY RELIEF

**(2)** The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers", agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

**(3)** The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

   **(a)** Prevent, bar, suppress, or halt an "assault and battery" by any person;

   **(b)** Provide an environment safe from an "assault and battery" by any person; or

   **(c)** Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery":

   **(a)** Emotional injury or distress;

   **(b)** One or more of loss of society, companionship, services, consortium, and income;

   **(c)** Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or

   **(d)** Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "bodily injury" or "property damage." … .

20.    Included within the POLICY's endorsement excluding Assault and Battery is the following definition:

"Assault and battery" means one or more of the following:

**a.** Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence;

**b.** Harmful or offensive contact between or among two or more persons;

**c.** Apprehension of harmful or offensive contact between or among two or more persons;



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

COMPLAINT FOR DECLARATORY RELIEF

**d.** Threats or abuse by words, acts, gestures, or deeds;

**e.** Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and

**f.** Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) a., b., c., d., or e. above.

…

The foregoing exclusion, including the definition quoted above, is referred to herein as the "Assault and Battery Exclusion."

21.    By endorsement, the POLICY adds the following exclusion to coverage:

**EXCLUSIONS APPLICABLE TO SPORTS/ LEISURE/ENTERTAINMENT ACTIVITIES AND DEVICES**

**\*\*\***

**Firearms, Fireworks and Other Pyrotechnic Devices**

"Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:

**1.** Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semiautomatic weapons and similar devices;…

by any Insured or by any person for which any Insured may be held liable in any capacity.

The foregoing exclusion is referred to herein as the "Firearms Exclusion."

## FIRST CAUSE OF ACTION

(Declaratory Relief: No Duty to Defend)

22.    STATE NATIONAL refers to and incorporates by reference the allegations in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23.    There is no duty to defend BADELLE under the POLICY because certain POLICY provisions, including without limitation the Liquor Liability Exclusion, the Assault and Battery Exclusion and the Firearms Exclusion, bar coverage for the UNDERLYING ACTION to the extent that the UNDERLYING ACTION presents no potential for any recovery that would be covered by the POLICY.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

24.     There presently exists a controversy between STATE NATIONAL, on the one hand, and BERTE and BADELLE, on the other hand, in that STATE NATIONAL contends that it has no obligation to defend BADELLE in the UNDERLYING ACTION.  BERTE and BADELLE, however, contend that a duty to defend exists. Accordingly, a declaration of this Court is necessary to determine the rights and obligations existing between STATE NATIONAL and BADELLE.

## SECOND CAUSE OF ACTION

(Declaratory Relief: No Duty to Indemnify)

25.     STATE NATIONAL refers to and incorporates by reference the allegations in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

26.     There is no duty to indemnify BADELLE under the POLICY because certain POLICY provisions, including without limitation the Liquor Liability Exclusion, the Assault and Battery Exclusion and the Firearms Exclusion, bar coverage for the UNDERLYING ACTION.

27.     There presently exists a controversy between STATE NATIONAL, on the one hand, and BERTE and BADELLE, on the other hand, in that STATE NATIONAL contends that it has no obligation to indemnify BADELLE in the UNDERLYING ACTION.  BERTE and BADELLE, however, contend that a duty to indemnify exists. Accordingly, a declaration of this Court is necessary to determine the rights and obligations existing between STATE NATIONAL and BADELLE.

**WHEREFORE,** STATE NATIONAL prays for judgment against Defendants as follows:

1.  On the First Cause of Action for a judgment declaring that STATE NATIONAL has no duty  to defend  BADELLE in the UNDERLYING ACTION.

2.  On the Second Cause of Action for a judgment declaring that STATE NATIONAL has no duty  to indemnify BADELLE  in the UNDERLYING ACTION.

3.  For costs of suit incurred herein, including attorneys' fees, where permitted by conduct and/or law; and

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1      4.  For such other relief as the court may deem just and proper.

2

3  DATED: January 26, 2023                LEWIS BRISBOIS BISGAARD & SMITH LLP

4                                    By:  /s/ Roger S. Raphael
5                                         Roger S. Raphael
                                          Attorneys for Plaintiff
6                                         STATE NATIONAL INSURANCE COMPANY, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# Next Insurance Application E-Signature

Customer: Brett Badelle
Agreement Summary clicked: 4/5/2021, 5:41:05 PM

# Application Summary

Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent act, which is a crime and may subject the person to criminal and civil penalties.

State
**CA**
My business is
**Venues and Event Spaces**
My email is
**brettbadelle@gmail.com**

## About you

First Name
**Brett**
Last Name
**Badelle**
Phone Number
**5103682342**
Your business name (will appear on policy):
**The Badelle Group, Inc**
Business Address
**3435 Henrietta St**
City
**Oakland**
Zip code
**94601**

## About your company

What best describes your business's ownership structure?
**Corporation**
What year did you start your business?
**2016**

# General Liability

## About your business

Number of executive officers:
**1**
Number of employees (do not include owners, subcontractors, or independent contractors):
**6**
Expected subcontractor cost in the next 12 months:
**12000**

## About your business

Expected payroll over the next 12 months (don't include owners or subcontractors):
**40000**
What is your expected total sales in the next 12 months?
**900000**
Square footage of your business premises (including private garages). If you work from home, then put the square footage of your home office.
**3400**

## About your work

Has your commercial insurance coverage been canceled, revoked, or non-renewed in the last 3 years (other than cancellation for non-payment or non-renewal for discontinuation of program)?
**No**
Has your business, or any of its officers, owners, or partners:
**No**
**\* Been convicted of a felony in the past 5 years?**
**\* Declared bankruptcy in the past 3 years?**
**\* Had business-related lawsuits, mediations, or arbitrations filed against them?**
**\* Become aware of any losses, accidents, or circumstances that might give rise to a claim against this policy?**

## About your insurance

Have you filed business insurance claims in the past three years?
**No**
Do you accept the following requirements of this policy?
**I Accept**
**\* Any subcontractors you work with must carry coverage with limits greater than or equal to your own**
**\* You must obtain and store a certificate of insurance from each of your subcontractors listing you as an additional insured on their policy**

**\* In case of a claim related to your subcontractor, you will not be covered without this documentation**

**\* Your subcontractors must have all required licenses before performing work**

We don't want to hide anything in fine print! This is a standard liability policy for your type of business, which means it won't cover:

**I Understand**

**\* Damage to your tools or equipment (that's actually Inland Marine insurance)**

**\* Damage to yourself, employees, or subcontractors (that's Worker's Compensation insurance)**

The following activities will be excluded from your policy. Please confirm that you acknowledge that you will not be covered for any of the following:

**I Understand**

**\* Any damages related to abuse or molestation**

**\* Damages from accessing or disclosing confidential or personal information**

**\* Damages from foreign drywall contaminants**

**\* Damages from your hiring, firing, or other employment practices**

**\* Damages that existed before the start of the policy period or which progressed from previous damages**

**\* Damaging or losing electronic data**

**\* Exposure to fungi or bacteria**

**\* Exposure to lead**

**\* Exposure to silica or silica-related dust**

**\* Fines, penalties, or other punitive damages**

**\* Firearms**

**\* Injury to employees**

**\* Operating or servicing any manned or unmanned aircraft or watercraft (including drones)**

**\* Physical or verbal violence**

**\* Property damage to your work or your subcontractor's work**

**\* Selling products, supplies, accessories, or tools that you manufacture. Products that you otherwise sell or distribute are still covered for damages to third parties**

**\* Serving, selling, or distributing alcohol or allowing alcohol on premises**

**\* Sexually transmitted diseases**

**\* Suing or filing claims against your co-owners, partners, or employees.**

**\* Working with pollutants or causing pollution**

When would you like your coverage to start?

**04/05/2021**

# About your business

Number of executive officers:
**1**
Number of employees (do not include owners, subcontractors, or independent contractors):
**6**
Expected subcontractor cost in the next 12 months:
**12000**

## About your business

My business is located in:
**A commercial space I rent**
Do you have more than one location?
**No**
What is your expected total sales in the next 12 months?
**900000**

## About your primary location

Are there multiple units (residential or commercial) in your building?
**Yes**
What is the total number of occupants in your building?
**2**
How many stories is this building?
**2**
What year was this building built?
**1965**
Has the plumbing, electrical, and heating been updated in the past 15 years?
**Yes**
What is the approximate square footage of your business?
**3400**
What is your building's construction material?
**Masonry non-combustible (steel roof and columns, brick walls) - strip shopping centers and buildings over 3-4 stories**
Is your building equipped with fire sprinklers?
**No**
Select any protective devices you have:

Local Burglar Alarm
**No**

Central Burglar Alarm
**No**

Local Fire Alarm

**No**

Central Fire Alarm
**No**

# About your coverage

Business Personal Property Coverage Limit - The total value of things your business owns including equipment, electronics, furniture, installations, inventory, etc.
**105000**

# About your insurance

Have you filed business insurance claims in the past three years?
**No**

# About your work

Has your commercial insurance coverage been canceled, revoked, or non-renewed in the last 3 years (other than cancellation for non-payment or non-renewal for discontinuation of program)?
**No**
Has your business, or any of its officers, owners, or partners:
**No**
**\* Been convicted of a felony in the past 5 years?**
**\* Declared bankruptcy in the past 3 years?**
**\* Had business-related lawsuits, mediations, or arbitrations filed against them?**
**\* Become aware of any losses, accidents, or circumstances that might give rise to a claim against this policy?**
When would you like your coverage to start?
**04/05/2021**

# Terms & conditions

You agree to the following terms and conditions:

Premium Audit
a. We will compute all premiums for this policy in accordance with our rules and rates in effect at the time.

b. The premium displayed is a deposit premium for the policy period. We reserve the right to review the details of your business at the end of your policy period. If your business has changed since you applied, we reserve the right to adjust your previous years premium up or down accordingly. This means we may refund you for excess premium paid, or that we may bill you for an increased rate to cover the increased risk of your business if such changes have occurred.

c. The Named Insured must keep records of the information we need for premium computation (generally, the information in this application), and send us copies if requested.

Annual Policy

This is an annual policy for 12 months of insurance coverage.

You accepted optional coverage for a certified act of terrorism as described  here for an annual amount of $0.

Documents

You agree to our Terms of Use and Privacy Policy.

Next Insurance acts as an agent that represents insurance companies to whom it will submit your insurance application and from whom it will procure your insurance coverage.

You agree to accept delivery of the insurance policy and related documents via email to the address provided and agree to consent in electronic transactions.

You can access your ID cards and policy document via any modern web browser on an internet connected device such as a tablet, phone, or laptop.  If you are unable to gain access to one of these devices, you are able to call Next Insurance at 1-855-222-5919 and one of our agents can provide you with a physical copy.

Premium Payment

You agree to accept delivery of the insurance policy and related documents via email to

the address provided and consent to electronic transactions.

Your premium payment does not bind coverage until the insurance carrier approves your application. In the event that the insurance carrier does not approve your application, your premium payment will be refunded.

Your insurance policy premiums are payable to Next Insurance, Inc., on a monthly basis. You will not be charged any interest, finance fee, late payment fee, or other type of finance charge. You agree that if you do not make a scheduled payment when due, we have the right to request cancellation of your insurance policy or policies. To avoid cancellation of your policy or policies, please be sure to make your monthly insurance premium payments on time.

Optional Terrorism Coverage

## Your Representations to Us

You are at least 18 years of age.

You are authorized to purchase and bind this insurance on behalf of the entity applying for coverage.

You have not had any judgments or liens placed against you in the last three years.

You authorize Next Insurance, as well as its agents and representatives, to obtain consumer reports covered under the Fair Credit Reporting Act ("FCRA") from a credit reporting agency of Next Insurance's choice. You consent to Next Insurance, from time to time, obtaining and reviewing consumer reports in order to assess the insurability, or for any permissible purpose under the FCRA, with respect to you or the company or organization you represent and/or own or operate. You understand that, pursuant to the FCRA, if any adverse action is taken based upon your consumer report, Next Insurance will alert you to this fact and send you a summary of your rights.

## [I have read & agree]

I verify the application summary and agree to be legally bound to these terms and conditions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT B**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW



| Email | Phone | Web | Address |
|---|---|---|---|
| support@next-insurance.com | (855) 222-5919 | www.next-insurance.com | PO Box 60787, Palo Alto, CA 94306 |

# Policy Documents

## Hello,

Enclosed you will find the policy documents that make up your insurance contract. Please read through all of these documents. If you have any questions or need to update any of your information, please contact us.

**A few key insurance terms to help navigate these documents**

- **Declarations:** Names your business as the insured and specifies limits.
- **Policy:** The formal contract issued by the insurance company.
- **Endorsements:** Modifications to the policy.
- **Exclusions:** What is not covered in the policy.

**Need to file a claim?**
Log in to our website or contact support. Be prepared with details about the claim.

# SIGNATURE PAGE

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____          _____
(signature)                                     (signature)
Secretary                                        President

# STATE NATIONAL INSURANCE COMPANY, INC.

(a stock insurance company)

**1900 L Don Dodson Dr.**
**Bedford, Texas 76021**
**(800) 877-4567**

**Administered by:**

**Next Insurance, Inc.**
**PO Box 60787**
**Palo Alto, CA 94306**
**(855) 222-5919**

## COMMON POLICY DECLARATIONS

---

**POLICY NUMBER:** NXTBF5S45G-00-GL

**Named Insured and Mailing Address:** Brett Badelle
The Badelle Group, Inc
3435 Henrietta St
Oakland, CA 94601

Policy Period:    From: 04/05/2021                  To: 04/05/2022
                  at 12:01 AM            standard time at the mailing address shown above

---

**DESCRIPTION OF BUSINESS:** Venues and Event Spaces

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
|---|---|
| | **PREMIUM** |
| BOILER AND MACHINERY COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ |
| COMMERCIAL CRIME COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $930.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| COMMERCIAL PROPERTY COVERAGE PART | $ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| PROFESSIONAL LIABILITY COVERAGE PART | $ |
| COMMERCIAL UMBRELLA/ EXCESS COVERAGE PART | $ |
| **TOTAL:** | $930.00 |

Premium shown is payable: $_____ at inception.

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

These Declarations, together with the Common Policy Conditions, and the Coverage Form(s) and endorsement(s), complete the above numbered policy.

Listed below are the forms and endorsements attached to this policy at the time of issue:

| <u>Title</u> | <u>Form Number and Edition Date</u> |
|---|---|
| Signature Page | NXT-0001 IL 1017 |
| Common Declarations Page | NXT-0340 BM GL 0619 |
| Calculation Of Premium | IL 00 03 09 08 |
| Common Policy Conditions | IL 00 17 11 98 |
| Nuclear Energy Liability Exclusion Endorsement (Broad Form) | IL 00 21 09 08 |
| California Changes - Cancellation and Nonrenewal | IL 02 70 09 12 |
| California Premium Refund Disclosure Notice | IL N 177 09 12 |
| Privacy Notice | NXT-0002 IL 0218 |

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

    Copyright, Insurance Services Office, Inc., 1998       □

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 02 70 09 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

© Insurance Services Office, Inc., 2012

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

© Insurance Services Office, Inc., 2012

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© Insurance Services Office, Inc., 2012                                   **IL 02 70 09 12**

IL N 177 09 12

# CALIFORNIA PREMIUM REFUND DISCLOSURE NOTICE

In accordance with CAL. INS. CODE § 481.(c), we are notifying you that in the event that the first Named Insured cancels the insurance policy, we shall retain 10% of the unearned premium. The premium refunded to you will therefore be calculated as 90% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 90% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

If you have an Equipment Breakdown policy or your policy contains an Equipment Breakdown Coverage Part, then the following premium refund calculation applies instead of that provided in the preceding paragraph. For the Equipment Breakdown policy premium or for the premium attributable to the Equipment Breakdown Coverage Part, we shall retain 25% of the unearned premium. The premium refunded to you will therefore be calculated as 75% of the pro rata unearned premium. But if cancellation takes place during the first year of a multiyear prepaid policy, we will return 75% of the pro rata unearned premium for the first year and the full annual premium for the subsequent years.

However, the penalties set forth in the preceding paragraphs will not apply under the following circumstances, even if the first Named Insured cancels the policy:

1. The Insured(s) no longer has a financial or insurable interest in the property or business operation that is the subject of insurance;

2. Cancellation takes place after the first year for a prepaid policy written for a term of more than one year; or

3. The policy is rewritten in the same insuring company or company group.

© Insurance Services Office, Inc., 2012

## STATE NATIONAL INSURANCE COMPANY, INC.
(a stock insurance company)

**1900 L Don Dodson Dr.**
**Bedford, Texas 76021**
**(800) 877-4567**

**Administered by:**

**Next Insurance, Inc.**
**PO Box 60787**
**Palo Alto, CA 94306**
**(855) 222-5919**

### COMMERCIAL GENERAL LIABILITY DECLARATIONS

**CERTAIN COVERAGES IN THE POLICY MAY BE WRITTEN ON A CLAIMS-MADE BASIS. PLEASE READ YOUR POLICY CAREFULLY.**

| | |
|---|---|
| **POLICY NUMBER:** NXTBF5S45G-00-GL | |
| **Named Insured and Mailing Address:** Brett Badelle<br>The Badelle Group, Inc<br>3435 Henrietta St<br>Oakland, CA 94601 | |
| Policy Period:   From: 04/05/2021    To: 04/05/2022<br>at 12:01 AM    standard time at the mailing address shown above | |

### DESCRIPTION OF BUSINESS

Insured is:

_____ Individual / Sole Proprietor                    _____ Partnership/Joint Venture

_____ Limited Liability Company                    _____ Trust

  X
_____ Other - Corporation

| Business of Insured: | Venues and Event Spaces |
|---|---|

### LIMITS OF INSURANCE

| | |
|---|---|
| Each Occurrence Limit | $1,000,000.00 |
| Damages to Premises Rented to You Limit | $100,000.00 Any one premises |
| Medical Expense Limit | $15,000.00 Any one person |
| Personal & Advertising Injury Limit | $1,000,000.00 Any one person or organization |
| General Aggregate Limit | $2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $2,000,000.00 |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| | 44276 | | AREA | $930.00 | $0.00 | | |

|  | | |
|---|---|---|
| | State Tax Or Other (if applicable) | $0.00 |
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $930.00 |
| PREMIUM SHOWN IS PAYABLE: | At Inception | $_____ |
| | At Each Anniversary | $_____ |
| | (If policy period is more than one year and premium is paid in annual installments) | |

**AUDIT PERIOD (IF APPLICABLE)**

X_____Annually_____Semi-Annually_____Quarterly_____Monthly

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

These Declarations, together with the Common Policy Conditions, and the Coverage Form(s) and endorsement(s), complete the above numbered policy.

Listed below are the forms and endorsements attached to this policy at the time of issue:

| Title | Form Number and Edition Date |
| --- | --- |
| Commercial General Liability Declarations | NXT-0337 BM GL 0619 |
| Commercial General Liability Coverage Form | CG 00 01 04 13 |
| Exclusion  - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception | CG 21 06 05 14 |
| Exclusion - Unmanned Aircraft | CG 21 09 06 15 |
| Communicable Disease Exclusion | CG 21 32 05 09 |
| Exclusion - Designated Products | CG 21 33 11 85 |
| Limitation Of Coverage To Designated Premises, Project Or Operation | CG 21 44 04 17 |
| Employment-Related Practices Exclusion | CG 21 47 12 07 |
| Total Pollution Exclusion Endorsement | CG 21 49 09 99 |
| Amendment Of Liquor Liability Exclusion | CG 21 50 04 13 |
| Fungi or Bacteria Exclusion | CG 21 67 12 04 |
| Exclusion of Certified Acts of Terrorism | CG 21 73 01 15 |
| Exclusion - Exterior Insulation and Finish Systems | CG 21 86 12 04 |
| Silica or Silica-Related Dust Exclusion | CG 21 96 03 05 |
| Exclusion - Damage to Work Performed by Subcontractors on Your Behalf | CG 22 94 10 01 |
| Continuous or Progressive Injury and Damage Exclusion | NXT-0076 BM GL 0218 |
| Cross Suits Exclusion | NXT-0077 BM GL 0218 |
| Bodily Injury to Employees Exclusion | NXT-0078 BM GL 0218 |
| Exclusion - Asbestos Exclusion | NXT-0080 BM GL 0218 |
| Prior Damages Exclusion | NXT-0081 BM GL 0218 |
| Blanket Additional Insured | NXT-0115 BM GL 0218 |
| Sexually Transmitted Diseases Exclusion | NXT-0116 BM GL 0218 |
| Abuse or Molestation Exclusion | NXT-0189 BM GL 0218 |
| Pre Existing Damages or Injury Exclusion | NXT-0208 BM GL 0218 |
| Unintentional E&O, Knowledge of Occurrence, Notice of Occurrence | NXT-0235 BM GL 0218 |
| Contractor/Subcontractor Insurance Requirements | NXT-0307 BM GL 0418 |
| Additional Insured Automatic Status | NXT-0308 BM GL 0619 |
| Foreign Drywall Contaminants | NXT-0314 BM GL 0218 |
| Exclusion - Assault and Battery | NXT-0053 BM GL 0318 |
| Exclusion - Lead Exclusion | NXT-0079 BM GL 0218 |
| Non Compensatory Damages Exclusion | NXT-0083 BM GL 0218 |
| Sports and Entertainment Devices SLE Exclusion | NXT-0336 BM GL 0218 |
| Notice of Terrorism | NXT-0073 BM GL 0418 |
| OFAC Notice | SNC-IL-0719-OFAC-N (SNIC) |
| Trade or Economic Sanctions | SNC-IL-0719-TOES-E (SNIC) |

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    © Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

  **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A;** and

  **b.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

  No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

  A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   © Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

© Insurance Services Office, Inc., 2014

**(e)** "Bodily injury" or "property damage" arising out of:

  **(i)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  **(ii)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Unmanned Aircraft**

  "Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

  **a.** The use of another's advertising idea in your "advertisement"; or

  **b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

  **1.** Designed;

  **2.** Manufactured; or

  **3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

© Insurance Services Office, Inc., 2014
**CG 21 09 06 15**

COMMERCIAL GENERAL LIABILITY
CG 21 32 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

   **2. Exclusions**

     This insurance does not apply to:

     **Communicable Disease**

     "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

     This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

     **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

     **b.** Testing for a communicable disease;

     **c.** Failure to prevent the spread of the disease; or

     **d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

     This insurance does not apply to:

     **Communicable Disease**

     "Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

     This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

     **a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

     **b.** Testing for a communicable disease;

     **c.** Failure to prevent the spread of the disease; or

     **d.** Failure to report the disease to authorities.

POLICY NUMBER: NXTBF5S45G-00-GL                      **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Designated Product(s):**

Any products, tools, supplies, or accessories manufactured by you

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.

POLICY NUMBER:NXTBF5S45G-00-GL

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Premises:** |
| **Project Or Operation:**<br>SEE ATTACHED SCHEDULE |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** – Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

POLICY NUMBER:  NXTBF5S45G-00-GL                    **COMMERCIAL GENERAL LIABILITY**

## SCHEDULE OF PROJECT OR OPERATION

Activities related to providing or operating as a(n) venues and event spaces

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of,  "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 50 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF LIQUOR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces Exclusion **c.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

**(1)** Manufacture, sell or distribute alcoholic beverages;

**(2)** Serve or furnish alcoholic beverages for a charge whether or not such activity:

**(a)** Requires a license;

**(b)** Is for the purpose of financial gain or livelihood;

**(3)** Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or

**(4)** Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

 © Insurance Services Office, Inc., 2012

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

**COMMERCIAL GENERAL LIABILITY**
**CG 21 73 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

**2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

**1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

**2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

**3.** A reinforced or unreinforced base coat;

**4.** A finish coat providing surface texture to which color may be added; and

**5.** Any flashing, caulking or sealant used with the system for any purpose.

 © ISO Properties, Inc., 2003

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004  ☐

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **l.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I - COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** section **1. Insuring Agreement,** paragraph **b.(3)**, paragraph **c.**, and paragraph **d., (1), (2), (3)** are replaced by the following:

**c.** This insurance does not apply to any damages because of or related to "bodily injury", "property damage", or "personal and advertising injury":

   **(1)** which first existed, or alleged to have first existed, prior to the inception of continuous coverage written with us; or

   **(2)** which are, or are alleged to be, in the process of taking place prior to the inception of continuous coverage written with us, even if the actual or alleged "bodily injury", "property damage", or "personal and advertising injury" continues during this policy period; or

   **(3)** which were caused, or are alleged to have been caused, by the same condition which resulted in "bodily injury", "property damage", or "personal and advertising injury" which first existed prior to the inception of continuous coverage written with us.

We shall have no duty to defend any insured against any loss, claim, "suit", or other proceeding alleging damages arising out of or related to "bodily injury", "property damage" or "personal and advertising injury" to which this endorsement applies.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury", "property damage" or "personal and advertising injury" arising from claims or "suits" brought by any named insured against any other named  insured.

All other terms and conditions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – BODILY INJURY TO EMPLOYEES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability** paragraph **2. Exclusions,** exclusion **e. Employer's  liability**

**e. Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of any insured arising out of and in the course of:

a. Employment by any insured; or

b. Performing duties related to the conduct of an insured's business;  or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of the polic y remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASBESTOS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "asbestos".

As used in this exclusion, "Asbestos" means the material in any form.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRIOR DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to **SECTION I – COVERAGES, Coverage A Bodily Injury and Property Damages Liability,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, Coverage B Personal and Advertising Injury Liability,** paragraph **2. Exclusions** and to **SECTION I – COVERAGES, Coverage C Medical Payment,** paragraph **2. Exclusions**

This insurance does not apply to:

**Prior Damages**

"Bodily injury", "property damage", "personal and advertising injury" and medical payments arising out of any damage, defect, deficiency, inadequacy or dangerous condition which existed prior to the inception of the policy period shown in the Declarations of this Policy, whether visible or invisible, detected or undetected, known or unknown, to any Insured before such inception date. This exclusion shall apply whether or not the Insured's legal obligation to pay damages in respect of such damage, defect, deficiency, inadequacy or dangerous condition was established before the inception date of this policy. This exclusion shall be applicable to all damage(s), defect(s), deficiency(ies), inadequacy(ies) or dangerous condition(s) including, but not limited to, damage, defect, deficiency, inadequacy, or dangerous condition.

"Bodily injury", "property damage", "personal and advertising injury" and medical payments arising out of any damage, defect, deficiency, inadequacy or dangerous condition shall be deemed to have existed as of the earliest date by which any damage occurred, irrespective of whether the Insured was aware of the existence of any such damage, and irrespective of whether such damage may have been continuous or progressive or may have been due to repeated exposure to substantially the same harmful conditions or may have become progressively worse during the period of this Policy.

**B.** For purposes of this endorsement only, Insured shall include any Named Insured or Insured as defined by this Policy, their officers, directors, partners, project managers, risk managers or any person acting in similar capacities.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION II - WHO IS AN INSURED** is amended to include the following as insureds:

**1. Lessor of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

No such person or organization is an insured under this section:

**a.** Upon expiration or termination of their contract or agreement with you for such leased equipment ends;

**b.** For any "bodily injury" or "property damage" caused by an "occurrence" which takes place after expiration or termination of their contract or agreement with you; or

**c.** For any "personal and advertising injury" caused by an "offense" which takes place after expiration or termination of their contract or agreement with you.

**2. Managers or Lessors of Premises**

Any person or organization from whom you lease premises when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability arising out of your ownership, maintenance or use of that part of the premises leased to you.

No such person or organization is an insured under this section for any:

**a.** For "bodily injury" or "property damage" caused by an "occurrence" which takes place after you cease to be a tenant in that premises.

**b.** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**3. Grantor of Franchise**

Any person or organization (referred to below as grantor of a franchise) with whom you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only with respect to "bodily injury" or "property damage" arising out of " liability as grantor of a franchise to you

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **SECTION III LIMITS OF INSURANCE**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY

**C.** With respect to the provisions of this endorsement, the following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **4. Other Insurance**:

Regardless of whether other insurance is available to an additional insured on a primary basis, this insurance will be primary and noncontributory if a written contract between you and the additional insured specifically requires that this insurance be primary.

All other terms and conditions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SEXUALLY TRANSMITTED DISEASES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions**, and to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**:

This insurance does not apply to:

**Sexually Transmitted Disease**

Any claim, "suit", or cause of action arising from instances, "occurrences" or allegations involving sexually transmitted diseases, including Acquired Immune Deficiency Syndrome (AIDS).

This exclusion applies even if the claim, "suit" or cause of action against the insured alleges negligence or other wrongdoing in the:

**(1)** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a sexually transmitted disease;

**(2)** Testing for a sexually transmitted disease;

**(3)** Failure to prevent the spread of the sexually transmitted disease; or

**(4)** Failure to report the sexually transmitted disease to the proper authorities.

All other terms and conditions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**:

**Sexual Abuse or Molestation**

Any liability arising out of:

**(1)** The actual, threatened or alleged:

    **(a)** Sexual abuse;
    **(b)** Sexual molestation;
    **(c)** Sexual assault;
    **(d)** Sexual victimization;
    **(e)** Physical abuse;
    **(f)** Physical assault; or
    **(g)** Coercion to engage in sexual activities;

    of any person by any "employee", assistant, "volunteer worker" or member of any insured; or

**(2)** Any injury resulting from the actual, threatened or alleged acts listed in subparagraphs **(1)(a)** through **(1)(g)** above; or

**(3)** The negligent:
    **(a)** Employment;
    **(b)** Investigation;
    **(c)** Supervision;
    **(d)** Reporting or failure to report to the proper authorities; or
    **(e)** Retention
    of any "employee", assistant, "volunteer worker" or member of any insured whose conduct would be excluded by subparagraph **1.** above.

All other terms and conditions of the policy remain unchanged.

 Includes material copyrighted by Insurance Services Office, Inc. used with its permission

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PRE-EXISTING DAMAGES OR INJURY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **1. Insuring Agreement** is replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

   b. This coverage part applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The outset of the "bodily injury" or "property damage" takes place during the policy period;

      (3) Such "bodily injury" or "property damage" did not result in damages which are the subject of any "suit", settlement or adjustment prior to the inception date of this insurance (or the retroactive date of this policy, if any, whichever is earlier); and

      (4) In the event the "bodily injury" or "property damage" results from continuous or repeated exposure to substantially the same general harmful conditions, then the

         (a) Outset of the "bodily injury" or "property damage" was on or after the inception date of this insurance (or the retroactive date of this insurance, if any, whichever is earlier); and

         (b) "Bodily injury" or "property damage" was not actually, or alleged to have been, in progress prior to the inception date of this insurance (or the retroactive date of this insurance, if any, whichever is earlier), even if the "bodily injury" or "property damage" continues during this policy period.

      These conditions **(1)**, **(2)**, **(3)** and **(4)** shall apply whether or not the "bodily injury" or "property damage" is known to any insured.

   c. If the outset of any "bodily injury" or "property damage" takes place during this policy period then it shall include any continuation of that "bodily injury" or "property damage" after the end of the policy period.

   d. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# UNINTENTIONAL ERRORS AND OMISSION
# KNOWLEDGE OF OCCURRENCE
# NOTICE OF OCCURRENCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

Unintentional Errors and Omissions

Any unintentional error or omission in the description of, or failure to completely describe, any premises or operations intended to be covered by this Coverage Part will not invalidate or adversely affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

Knowledge of Occurrence

Notwithstanding any other provision(s) in this policy to the contrary, and solely as respects any loss reporting requirements under this policy, it is understood that knowledge of "occurrence" by the agent, servant, or employee of the insured or any other person shall not in itself constitute knowledge by the insured, unless the risk manager or risk management department or substantially similar position or department received notice from said agent, servant, employee or any other person.

Notice of Occurrence

Your rights under this coverage part will not be prejudiced if you fail to give us notice of an "occurrence", offense or claim and that failure is solely due to your reasonable belief that the "bodily injury", "property damage" or "personal and advertising injury" is not covered under this coverage part. However, you shall give written notice of such "occurrence", offense or claim to us as soon as you are aware that this insurance may apply to such "occurrence", offense or claim.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTRACTOR/SUB-CONTRACTOR INSURANCE REQUIREMENTS

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Notwithstanding any other provision in this Coverage Part:

**A.** Coverage under this Coverage Part does not apply to an "occurrence" in which a sub-contractor is involved unless such sub-contractor:

   **1.** Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and

   **2.** Has commercial general liability insurance on which you are named as an additional insured with limits equal to or exceeding the limits provided by this policy.

**B.** With respect to an "occurrence" in which a sub-contractor is involved and such sub-contractor:

   **1.** Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and

   **2.** Has commercial general liability insurance on which you are named as an additional insured with limits equal to or exceeding the limits provided by this policy,

any insurance provided by this Coverage Part shall be excess over any insurance provided to you through or by the sub-contractor.

All other terms and conditions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

**A.** Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

   **1.** Your acts or omissions; or

   **2.** The acts or omissions of those acting on your behalf
   with respect to:

   **a.** Premises you own, rent, lease, or occupy; or
   **b.** Your ongoing operations performed for that insured.

**B.** The insurance afforded to such additional insured:

   **1.** Only applies to the extent permitted by law; and

   **2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**C.** The Limits of Insurance applicable to the additional insured are the lesser of those specified in:
   1. The written contract or agreement; or
   2. The Declarations for this policy, whichever is less.
   Such are included in, and not in addition to, the Limits of Insurance shown in the Declarations.

**D.** Regardless of whether other insurance is available to an additional insured on a primary basis, this insurance will be primary and noncontributory if a written contract between you and the additional insured specifically requires that this insurance be primary.


All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FOREIGN DRYWALL CONTAMINANTS EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY POLICY

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of, resulting from, caused by, or contributed to by the discharge, dispersal, seepage, migration, release, escape, inhalation, ingestion, existence, or presence of one or more "foreign drywall contaminants" at any time.   This exclusion only applies if the injury and/or damage is caused by, or is a result of, the emission of fumes, odors, vapors, and/or leaching of substances from building materials, drywall or drywall components.

2.  Any damages or any loss, cost or expense arising out any (i) claim or suit by or on behalf of any governmental authority or any other alleged responsible party, or because of (ii) request, demand, order or statutory or regulatory requirement that any insured or any other person or entity should be responsible for:

    a. Assessing the presence, absence or amount or effects of "foreign drywall contaminants";

    b. Identifying, sampling or testing for, detecting, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, abating, disposing of or mitigating "foreign drywall contaminants".

3.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with any of the subsections above; or

4.  Any obligation to share damages with or repay someone else in connection with any of the subsections above.

    As used in this exclusion, "Foreign drywall contaminants" are described as chemicals or compounds that can be in a solid, liquid or gaseous form. They can be contained in or applied to certain drywall (also known as gypsum board, plasterboard, sheetrock and wallboard) or drywall components. They also can be found or created when such drywall or drywall components come into contact with other elements. They allegedly or actually cause damage to property, corrode materials, emit noxious odors, cause health problems and/or otherwise act as a contaminant or irritant. They include but are not limited to, the following: butanethial, carbon disulfide, carbonyl sulfide, hydrogen sulfide, mercaptan, methylthio pyridine, sulfuric acid, sulfurous acid, sulfur dioxide and strontium sulfide. This includes drywall manufactured anywhere other than the United States of America (including its territories and possessions), Puerto Rico and Canada.

    All other terms and conditions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions**:

**Assault and Battery**

"Bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery."

This exclusion applies regardless of the degree of culpability or intent and without regard to:

**(1)** Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly:

    **(a)** At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants;

    **(b)** By the insured's customers, patrons, or guests;

    **(c)** By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or

    **(d)** By any other person or entity, by any means or cause whatsoever;

**(2)** The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

**(3)** The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

    **(a)** Prevent, bar, suppress, or halt an "assault and battery" by any person;

    **(b)** Provide an environment safe from an "assault and battery" by any person; or

    **(c)** Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery":

    **(a)** Emotional injury or distress;

    **(b)** One or more of loss of society, companionship, services, consortium, and income;

    **(c)** Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or

**(d)** Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "bodily injury" or "property damage."

**B. SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions,** exclusion **a. Expected Or Intended Injury** is replaced by the following:

    **a. Expected Or Intended Injury**

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**C.** The following is added to **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions**:

**Assault and Battery**

"Personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery." This exclusion applies regardless of the degree of culpability or intent and without regard to:

**(1)** Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly:

    **(a)** At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants;

    **(b)** By the insured's customers, patrons, or guests;

    **(c)** By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or

    **(d)** By any other person or entity, by any means or cause whatsoever;

**(2)** The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers", agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved in or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

**(3)** The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

    **(a)** Prevent, bar, suppress, or halt an "assault and battery" by any person;

    **(b)** Provide an environment safe from an "assault and battery" by any person; or

    **(c)** Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery":

    **(a)** Emotional injury or distress;

    **(b)** One or more of loss of society, companionship, services, consortium, and income;

    **(c)** Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or

    **(d)** Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "personal and advertising injury."

**D.** **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions,** exclusion **a. Knowing Violation Of Rights Of Another** is replaced by the following:

    **a.** **Knowing Violation Of Rights Of Another**

    "Personal and advertising injury" expected or intended from the standpoint of, or caused by or at the direction of, the insured. This exclusion applies regardless of the presence or absence of knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

**E.** The following is added to **SECTION V - DEFINITIONS**:

"Assault and battery" means one or more of the following:

    **a.** Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence;

    **b.** Harmful or offensive contact between or among two or more persons;

    **c.**  Apprehension of harmful or offensive contact between or among two or more persons;

    **d.**  Threats or abuse by words, acts, gestures, or deeds;

    **e.**  Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and

    **f.**  Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) **a., b., c., d.,** or **e.** above.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to **SECTION I - COVERAGES**, **Coverage A Bodily Injury and Property Damages Liability**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE  B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**

"Bodily injury" or "property damage" or "personal and advertising injury" arising out of the actual, alleged, suspected or threatened ingestion of, inhalation of, contact with, exposure to, existence of, or presence of "lead"

As used in this exclusion, "Lead" means the element in any form.

All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – NON-COMPENSATORY DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following  added:

**PUNITIVE DAMAGES**

This insurance does not apply to any claim for or awards of non-compensatory damages, including, but not limited to:

1.  Punitive, exemplary or multiple damages;

2.  Equitable or non-pecuniary relief; or

3.  Fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.


All other terms and conditions of the policy remain unchanged.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSIONS APPLICABLE TO SPORTS/LEISURE/ENTERTAINMENT ACTIVITIES AND DEVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**I.    EXCLUSIONS**

Any exclusion for which an "X" appears is added to **SECTION I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**:

___**Amusement Device**

"Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of any "amusement device".

For purposes of this exclusion, "amusement device" means any device or equipment a person rides, uses or otherwise employs in the participation of an activity for enjoyment, including, but not limited to, any of the following:

**1.**    Mechanical or non-mechanical ride or riding device;
**2.**    Slide or water slide (including any ski or tow used with a water slide);
**3.**    Moon Bounces, "Moon Walks, "Space Walks", and similar inflatable games and device;
**4.**    Gymnastic equipment;
**5.**    Laser tag, bungee jumping, Sumo wrestling, human spheres, water slides and similar interactive games and device;
**6.**    Advertising balloons, rooftop balloons, helium blimps and similar device.

This exclusion applies irrespective of in what manner an insured may be held liable in any capacity.

___**Animal**

"Bodily injury", "property damage" or "personal and advertising injury":

**1.**    Arising out of contact with; or
**2.**    Caused by or resulting from

any animal, reptile, bird, fish, insect or animal organism other than human owned by, leased or loaned to, or in the care, custody or control of any insured.

___**Bungee**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, operation, maintenance or use of any bungee operation or equipment whether owned, operated, maintained or used by you, any other insured or any other person or entity.

___**Concert or Special Event**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.**    The promotion of;
**2.**    The hosting of;
**3.**    The providing a venue for

a concert, show, exhibition, fair, sporting contents, social gathering or other similar activity or theatrical event.

### X___Firearms, Fireworks and Other Pyrotechnic Devices

"Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:

1. Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices;
2. Fireworks, including firecrackers, Roman Candles, pinwheels skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these

by any Insured or by any person for which any Insured may be held liable in any capacity.

### ___Gymnastics

"Bodily injury", "property damage" or "personal and advertising injury" arising from arising out of parkour, urban gymnastics, freestyle gymnastics, freestyle acrobatics and similar activities, including but not limited to, wall runs, wall flips or wall spins.

### ___Inflatable Promotional Device

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, operation, maintenance or use of any "inflatable promotional device"; provided, however, this exclusion does not apply to "inflatable promotional devices" you do not own, operate, or maintain.

### ___Injury or Death to Animals

"Bodily injury", "property damage" or "personal and advertising injury" arising out of injury or death to any animal.

### ___Inverted Aerial Maneuver

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the attempt to perform or performance of any inverted aerial maneuver by a skier from a jump:

1. Built by you or on your behalf; or
2. Built on your premises with your permission or knowledge.

### ___Mosh Pits

"Bodily injury", "property damage" or "personal and advertising injury" arising out of activity associated with or occurring in "mosh pits".

### ___Object Propelled

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any object propelled, projected, kicked or thrown, whether intentionally or unintentionally:

1. Into the crowd by or at the direction of a "participant" or insured;
2. By a "participant" or an insured during an event, including but not limited to any performer throwing objects, himself, herself or another person into the audience, backstage or side-stage area.

COMMERCIAL GENERAL LIABILITY

___**Participant**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the involvement of a participant in any activity, event or exhibition, including, but not limited to, any contest, exhibition, physical training, sport, event, athletic activity, martial arts or stunt.

___**Performer**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the involvement of any performer during any activity, event or exhibition, including, but not limited to any stunt, concert, show or theatrical event.

___**Ring or Cage Sports**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of participation in ring or cage sports. Ring or cage sports include, but are not limited to, conventional boxing, full contact or no-holds-barred fighting/confrontations, sparring and practicing or preparing for such activities.

___**Rodeo**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any rodeo activity, including, but not limited to, bronco or bull riding, steer roping, team

roping, barrel racing or horseback riding.

___**Sports Trainers**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting directly or indirectly, in whole or in part from the rendering of or failure to render professional services by any "sports trainer" or any act, error, omission, malpractice or mistake of a professional nature committed by any "sports trainer".

___**Structure Collapse**

"Bodily injury", "property damage" or "personal and advertising injury" arising from or resulting, directly or indirectly, from the partial or total collapse of any bleacher, grandstand, benches, deck, stairs, steps, platform, boxes or other structures, owned, maintained or used by any insured, whether such structure is permanent or temporary.

___**Stunting Activity or Special Effects**

"Bodily injury", "property damage" or "personal and advertising injury" arising out of any "stunting activity" or special effects or any practice or preparation for any such "stunting activity" or special effects.

___**Trampolines**

Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of any trampoline or similar device. This exclusion also applies to any claim alleging negligence or breach of contract by supplying and then failing to maintain a trampoline or supervise its use.

___**Trampolines (Limited)**

Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership,

maintenance, operation, sponsorship, set-up or take-down or other use of any trampoline or similar device. This exclusion also applies to any claim alleging negligence or breach of contract by supplying and then failing to maintain a trampoline or supervise its use. However, this exclusion does not apply to rebounders which are 4 feet or less in diameter and whose surface is no more than two (2) feet above the floor level.

___**Wall Climbing**

Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of any rock climbing walls, Velcro walls and similar scaling device.

___**Wall Climbing (Limited)**

Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of any rock climbing walls, Velcro walls and similar scaling device in excess of ten (10) feet in height.

**II.    DEFINITION**

For purposes of this endorsement, the following definitions are added to **SECTION V - DEFINITIONS**:

**A.** "Inflatable promotional device" means any inflatable device or equipment used for advertising or promotional purposes, including but not limited to, any hot air balloon or inflatable signage.

**B.** "Mosh pit" means the area in front of the stage where attendees are allowed to freely gather during a performance and/or event.

**C.** "Participant" means any person while instructing, supervising, training or practicing for, participating in or while otherwise involved in any sports or athletic activity, contest, or exhibition. "Participant" does not include any spectator.

**D.** "Sports trainer" means a trainer employed   by the insured or working on the insured's behalf who carries out the practice  of  prevention  and/or  rehabilitation of injuries incurred by athletes.

**E.** "Stunting Activity", means any feat or activity requiring special strength, skill, equipment, device or daring.

All other terms and conditions of the policy remain unchanged.

**POLICYHOLDER DISCLOSURE**

**NOTICE OF TERRORISM INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Risk Insurance Coverage**

|   | I hereby elect to purchase terrorism coverage for a prospective premium of $ 3.96                    . |
|---|---|
| X | I hereby decline to purchase terrorism coverage for certified acts of terrorism.  I understand I will have no coverage for losses resulting from certified acts of terrorism. |

| _____ | State National Insurance Company, Inc. |
|---|---|
| Policyholder/Applicant's Signature | Insurance Company |
| Brett Badelle | NXTBF5S45G-00-GL |
| Print Name | Policy Number |
| 04/05/2021 | |
| Date | |

NXT-0073 BM GL 0418    Includes copyrighted material of National Association of Insurance Commissioners, with its permission.

**State National Insurance Company, Inc.**

**Policy Holder Privacy Statement**

As a policyholder of State National Insurance Company, Inc., you may remember that you purchased your State National Insurance Company, Inc. policy from an insurance agent. Please understand that the agent from whom you purchased your State National Insurance Company, Inc. policy is not affiliated with State National Insurance Company, Inc., but rather is a separate legal entity.  In the process of purchasing your State National Insurance Company, Inc. policy, you may have provided your insurance agent with various information, including nonpublic personal information about yourself.  You did not provide any such information directly to State National Insurance Company, Inc., but on occasion we may receive such information from your insurance agent.  This statement is intended to explain and disclose State National Insurance Company, Inc.'s policies and practices regarding the collection, disclosure and protection of such information.

State National Insurance Company, Inc. will provide customers like yourself with a copy of our privacy policy at the beginning of our relationship and annually thereafter, unless and until our relationship ends.  As our products and services continue to evolve, it may be necessary to review and revise our privacy policies, in which case we will provide you with an updated privacy notice.

I.      <u>Financial Information Collected</u>.

During the ordinary course of our business, State National Insurance Company, Inc. may – as explained above – collect information about you from the following sources:

- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

II.     <u>Financial Information Disclosed</u>.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

III.    <u>Parties To Whom Information is Disclosed</u>.

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

IV.     <u>Confidentiality and Security of Information</u>.

We restrict access to information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to guard your information.

V.     Access to and Correction of Your Information.

You may write to us if you have any questions about the information that we may have in our records about you. We will respond within 30 business days from the date such request is received to your inquiry. If you wish, you may review this information in person or receive a copy at a reasonable charge. You can notify us in writing if you believe any information should be corrected, amended, or deleted and we will review your request. We will either make the requested change or explain why we did not do so. If we do not make the requested change, you may submit a short written statement identifying the disputed information, which will be included in all future disclosures of your information.

We value your business. This statement is for your information. No response is necessary.

Secretary

President

**INTERLINE**

# STATE NATIONAL INSURANCE COMPANY, INC.

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

SNC-IL-0719-OFAC-N

**INTERLINE**

# STATE NATIONAL INSURANCE COMPANY, INC.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited, to those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

SNC-IL-0719-TOES-E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joel Siegal 117044<br>Siegal & Richardson, LLP<br>436 14th Street, Suite 1106 Oakland CA 94612<br>TELEPHONE NO.: **(510) 271-6720**   FAX NO. *(Optional):* **(510) 500-9512**<br>E-MAIL ADDRESS: **joelsiegal@yahoo.com**<br>ATTORNEY FOR *(Name):* Mahmoud Berte; Tessa Reiter | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>**12/08/2021 at 10:01:54 AM**<br>By: Suzanne Pesko, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Alameda**
STREET ADDRESS: **1225 Fallon St.**
MAILING ADDRESS:
CITY AND ZIP CODE: **Oakland 94612**
BRANCH NAME: **Rene C. Davidson Alameda Courthouse**

CASE NAME:
Berte, Mahmoud, et al. v. Yoon, Jane, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✔ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 21CV003753 |
| | | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>✔ Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35)<br>**Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37)<br>**Real Property**<br>☐ Eminent domain/Inverse<br>condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26)<br>**Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |

2. This case ☐ is ✔ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel    e. ☐ Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve        courts in other counties, states, or countries, or in a federal
   c. ☐ Substantial amount of documentary evidence        court
                                                          f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ✔ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ✔ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 12/07/2021

Joel Siegal
_____        ►        _____
(TYPE OR PRINT NAME)                            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joel Siegal 117044<br>Siegal & Richardson, LLP<br>436 14th Street, Suite 1106<br>Oakland CA 94612 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>12/08/2021 at 10:01:54 AM<br>By: Suzanne Pesko, Deputy Clerk |

TELEPHONE NO: (510) 271-6720        FAX NO. *(Optional):* (510) 500-9512

E-MAIL ADDRESS *(Optional):* joelsiegal@yahoo.com

ATTORNEY FOR *(Name):* Mahmoud Berte; Tessa Reiter

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda**

STREET ADDRESS: 1225 Fallon St.

MAILING ADDRESS:

CITY AND ZIP CODE: Oakland 94612

BRANCH NAME: Rene C. Davidson Alameda Courthouse

PLAINTIFF: **Mahmoud Berte; Tessa Reiter**

DEFENDANT: **Jane Yoon, et al. (see attached list of all defendants on p. 4)**

☑ DOES 1 TO 100

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

☐ AMENDED *(Number):*

Type *(check all that apply):*

☐ MOTOR VEHICLE    ☑ OTHER *(specify):* Negligence; Premises Liability

  ☑ Property Damage    ☐ Wrongful Death

  ☑ Personal Injury    ☐ Other Damages *(specify):*

Jurisdiction *(check all that apply):*

☐ ACTION IS A LIMITED CIVIL CASE

  Amount demanded  ☐ does not exceed $10,000

                 ☐ exceeds $10,000, but does not exceed $25,000

☑ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)

☐ ACTION IS RECLASSIFIED by this amended complaint

  ☐ from limited to unlimited

  ☐ from unlimited to limited

CASE NUMBER:

21CV003753

1. **Plaintiff** *(name or names):* Mahmoud Berte; Tessa Reiter

  alleges causes of action against **defendant** *(name or names):*

  **Jane Yoon, et al. (see attached list of all defendants)**

2. This pleading, including attachments and exhibits, consists of the following number of pages:

3. Each plaintiff named above is a competent adult

  a. ☐ **except** plaintiff *(name):*

    (1) ☐ a corporation qualified to do business in California

    (2) ☐ an unincorporated entity *(describe):*

    (3) ☐ a public entity *(describe):*

    (4) ☐ a minor ☐ an adult

      (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed

      (b) ☐ other *(specify):*

    (5) ☐ other *(specify):*

  b. ☐ **except** plaintiff *(name):*

    (1) ☐ a corporation qualified to do business in California

    (2) ☐ an unincorporated entity *(describe):*

    (3) ☐ a public entity *(describe):*

    (4) ☐ a minor ☐ an adult

      (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed

      (b) ☐ other *(specify):*

    (5) ☐ other *(specify):*

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use<br>
Judicial Council of California<br>
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death**

Page 1 of 3<br>
Code of Civil Procedure, § 425.12<br>
www.courtinfo.ca.gov

PLD-PI-001

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Berte, Mahmoud, et al. v. Yoon, Jane, et al. | |

4. ☐ Plaintiff (name):

   is doing business under the fictitious name (specify):


   and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

   a. ☑ **except** defendant (name):JY Athol, LLC
      (1) ☑ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   c. ☑ **except** defendant (name):Fabian and Badelle LLC dba 310 Gallery
      (1) ☑ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   b. ☑ **except** defendant (name):Jane HJ Yoon Foundation
      (1) ☑ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   d. ☑ **except** defendant (name):The Gallery Art Bar
      (1) ☑ a business organization, form unknown
      (2) ☐ a corporation
      (3) ☐ an unincorporated entity (describe):

      (4) ☐ a public entity (describe):

      (5) ☐ other (specify):

   ☑ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

   a. ☑ Doe defendants (specify Doe numbers):1 - 50 _____ were the agents or employees of other named defendants and acted within the scope of that agency or employment.

   b. ☑ Doe defendants (specify Doe numbers):51 - 100 _____ are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are (names):


8. This court is the proper court because

   a. ☑ at least one defendant now resides in its jurisdictional area.
   b. ☑ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
   c. ☑ injury to person or damage to personal property occurred in its jurisdictional area.
   d. ☐ other (specify):


9. ☐ Plaintiff is required to comply with a claims statute, **and**

   a. ☐ has complied with applicable claims statutes, **or**
   b. ☐ is excused from complying because (specify):

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE:<br>Berte, Mahmoud, et al. v. Yoon, Jane, et al. | CASE NUMBER: |
| --- | --- |

10.  The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. ☐ Motor Vehicle
   b. ☑ General Negligence
   c. ☐ Intentional Tort
   d. ☐ Products Liability
   e. ☑ Premises Liability
   f. ☐ Other *(specify):*

11.  Plaintiff has suffered
   a. ☑ wage loss
   b. ☑ loss of use of property
   c. ☑ hospital and medical expenses
   d. ☑ general damage
   e. ☑ property damage
   f. ☑ loss of earning capacity
   g. ☑ other damage *(specify):*
       **Permanent disability; all other that the court deems appropriate.**

12.  ☐ The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. ☐ listed in Attachment 12.
   b. ☐ as follows:

13.  The relief sought in this complaint is within the jurisdiction of this court.

14.  **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) ☑ compensatory damages
       (2) ☐ punitive damages
       The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
       (1) ☑ according to proof
       (2) ☐ in the amount of: $

15.  ☐ The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: **12/07/2021**

**Joel Siegal**
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Berte, Mahmoud, et al. v. Yoon, Jane, et al. | |

1  All Defendants:

2

3  1. Jane Yoon (professional Realty Pro)

4  2. JY Athol, LLC

5  3. Jane HJ Yoon Foundation

6  4. Fabian and Badelle LLC dba 310 Gallery

7  5. The Gallery Art Bar

8  6. JY 14th Street LLC

9  7. Brett Badelle

10  8. The Badelle Group Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27  This page may be used with any Judicial Council form or any other paper filed with the court.

Page 4

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Berte, Mahmoud, et al. v. Yoon, Jane, et al. | |

**ATTACHMENT** *(Number):* 5

*(This Attachment may be used with any Judicial Council form.)*

e. EXCEPT defendant JY 14th Street LLC, a business organization, form unknown;

f. EXCEPT defendant The Badelle Group Inc., a business organization, form unknown.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

**Page** 5    **of** 10

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE:<br>Berte, Mahmoud, et al. v. Yoon, Jane, et al. | CASE NUMBER: |
|---|---|

ATTACHMENT *(Number):* _____

*(This Attachment may be used with any Judicial Council form.)*

Introduction: (Facts common to all causes of action.)

Defendants in this action are Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; and The Badelle Group Inc.

As explained by the California Supreme Court in Ann M., 6 Cal. 4th 666; Sharon P., 21 Cal. 4th 1181; and Delgado v. Trax Bar and Grill, 36 Cal. 4th 224, only when "heightened" foreseeability of third party criminal activity on the premises exists - shown by similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location - does the scope of a business proprietor's special relationship based duty include an obligation to provide guards to protect the safety of patrons. Ann M., supra 6 Cal. 4th at 679 and fn. 7; Sharon P., supra 21 Cal. 4th at 1190-1191; 1197-1198.

In the case before us, there clearly was that "heightened" level of foreseeability of third party criminal activity on the premises.

This case is about a near fatal shooting that occurred at the Gallery Art Bar on April 17, 2021, which left Mahmoud Berte, a 23-year-old Marine Corp veteran, with at least ten bullet holes in his body on that fateful horrible night. Berte (hereinafter "Plaintiff") and his life will never be the same. As a result of the gunshot wounds he sustained as a patron of the Gallery Art Bar, he has had over a dozen surgeries, his left leg has been amputated, his right leg now has significant plates and screws in it, and he must use a colostomy bag. In short, Plaintiff went from being an honorably discharged Marine Corp veteran with a bright future to, sadly, a significantly disabled person, concerned about his ability to earn a living and proceed with life after this traumatic event.

The facts of this case will confirm that the street the Gallery Art Bar is located on is amongst the most dangerous and violent streets in West Oakland. Statistics confirm that violent crime within the police beat where the Gallery Art Bar is located (04X) is equal to over 300% of other areas in the city. In 2019 alone, there were thirty-six homicides in police beat 04X. Even as of this filing, the Gallery Art Bar has two bullet holes in its front window. Within four years before this shooting, two patrons were shot and killed in an art gallery across the street from the Gallery Art Bar. On information and belief, there was a shooting in the business next door to Defendant's in the year prior to this shooting.

On the evening of this incident, there were security guards patrolling the line of customers to enter the Gallery Art Bar, but the guards did not have metal wands nor did they appropriately check for weapons. Sometime in the evening, as plaintiff was leaving the men's room, an assailant shot plaintiff on at least ten occasions. As confirmed by the police report, a bartender that was present indicated to police that he believed there were at least four other guns in the Gallery Art Bar that night. Whether the aforementioned "security guards" were employed by a private contractor or directly by these defendants is unknown at this time. But defendant and each of them owed duties of care to plaintiff.

All defendants owed a duty of care to plaintiffs. That duty was breached proximately harming plaintiffs in an amount to be proven at trial.

---

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Berte, Mahmoud, et al. v. Yoon, Jane, et al. | |

**ATTACHMENT** *(Number):* _____

*(This Attachment may be used with any Judicial Council form.)*

The plaintiffs in this case are Mahmoud Berte and Tessa Reiter. Berte is 23 years old. He is a veteran of the United States Marine Corp. He has an honorable discharge from the Corp. He was starting school, and he had a very bright future ahead of himself.

Also a plaintiff in this action is Tessa Reiter. Tessa Reiter and Mahmoud have been engaged to be married for three years. Prior to this incident, Mahmoud financially supported Tessa. Together they moved from the east coast to San Francisco, so that Mahmoud could begin school in San Francisco. They planned to be married. Now unfortunately their lives have been altered forever. Tessa now assists in cleaning the colostomy bag. She must assist Berte in getting into his wheelchair. They are unable to participate in other activities. Tessa brings this action for loss of consortium.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 7 ___ of 10 ___

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov

**PLD-PI-001(2)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Berte, Mahmoud, et al. v. Yoon, Jane, et al. | |

**First** _____    **CAUSE OF ACTION—General Negligence**    Page 8 _____
    *(number)*

ATTACHMENT TO   [✔] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* Mahmoud Berte; Tessa Reiter

       alleges that defendant *(name):* Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; The Badelle Group Inc.

       [✔] Does 1 _____ to 100 _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date):* April 17, 2021
at *(place):* The Gallery Art Bar, 310 14th Street in Oakland, California

*(description of reasons for liability):*

Plaintiff herein incorporates by reference any and all preceding allegations as pled fully herein. At all times alleged herein, each of the above-named Defendants owned, operated, and managed the Gallery Art Bar. Each Defendant was acting as the agent and representative of each remaining Defendant. As such, on 04/17/2021, Defendants owed a duty of care to patrons at the Gallery Art Bar, including Plaintiff Berte - a patron. Defendants owed a duty to Plaintiff to conduct their bar in a reasonable manner, including taking reasonable steps to prevent foreseeable criminal acts of third parties; a special duty to Plaintiff to take reasonable steps to avert impending assault and dangers that Defendant's security has actual notice of; a duty to take reasonable security measures to provide security for a club that Defendants knew was in a high crime area known for recent gun violence, shootings, and homicides.

Defendants, each of them, breached these duties by allowing patrons with guns into the bar; failing to provide a safe bar; failing to conduct adequate security procedures and protocols, including failing to search the persons and purses of patrons; failing to use metal detectors to search patrons before entering the establishment; failing to operate security technology or systems; failing to prevent guns from entering the bar; and failing to enact a security policy to prevent guns from entering the bar.

As a legal and proximate result of Defendants' actions and omissions, Plaintiff Berte was severely wounded inside the bar and shot approximately 10 times by live rounds from a firearm throughout his body. The firearm was fired by another patron in the bar. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries in that Plaintiff would have not been shot and injured had Defendants performed their duties. Plaintiff sustained person injuries, including hospitalization, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress, all in an amount to be proven at trial.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Page 1 of 1
Code of Civil Procedure 425.12
www.courtinfo.ca.gov

**PLD-PI-001(4)**

| SHORT TITLE:<br>Berte, Mahmoud, et al. v. Yoon, Jane, et al. | CASE NUMBER: |
|---|---|

Second_____ **CAUSE OF ACTION—Premises Liability**     Page 9_____
(number)

ATTACHMENT TO     ☑ Complaint     ☐ Cross - Complaint
*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name)*: Mahmoud Berte; Tessa Reiter
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On *(date)*: April 17, 2021                         plaintiff was injured on the following premises in the following

fashion *(description of premises and circumstances of injury)*:
See facts common to all causes and allegations of general negligence attached hereto.

Prem.L-2.     ☑ **Count One—Negligence** The defendants who negligently owned, maintained, managed and
operated the described premises were *(names)*:
Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle
LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; The Badelle Group Inc.

☑ Does 1_____ to 100_____

Prem.L-3.     ☑ **Count Two—Willful Failure to Warn** [Civil Code section 846] The defendant owners who willfully
or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
*(names)*:
Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle
LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; The Badelle Group Inc.

☑ Does 1_____ to 100_____

Plaintiff, a recreational user, was ☐ an invited guest ☐ a paying guest.

Prem.L-4.     ☐ **Count Three—Dangerous Condition of Public Property** The defendants who owned public property
on which a dangerous condition existed were *(names)*:

☐ Does_____ to _____

a. ☐ The defendant public entity had ☐ actual ☐ constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. ☐ The condition was created by employees of the defendant public entity.

Prem.L-5. a. ☑ **Allegations about Other Defendants** The defendants who were the agents and employees of the
other defendants and acted within the scope of the agency were *(names)*:
Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle
LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; The Badelle Group Inc.

☑ Does 1_____ to 100_____

b. ☐ The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
☐ described in attachment Prem.L-5.b ☐ as follows *(names)*:

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(4) [Rev. January 1, 2007]
**CAUSE OF ACTION—Premises Liability**
Code of Civil Procedure, § 425.12
*www.courtinfo.ca.gov*

**PLD-PI-001(2)**

| SHORT TITLE:<br>Berte, Mahmoud, et al. v. Yoon, Jane, et al. | CASE NUMBER: |
|---|---|

Third _____ **CAUSE OF ACTION—General Negligence**    Page 10 _____
    (number)

ATTACHMENT TO ☑ Complaint ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* **Mahmoud Berte; Tessa Reiter**

    alleges that defendant *(name):* Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; Fabian and Badelle LLC dba 310 Gallery; The Gallery Art Bar; JY 14th Street LLC; Brett Badelle; The Badelle Group Inc.

    ☑ Does **1** _____ to **100** _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date):* **April 17, 2021**
at *(place):* **The Gallery Art Bar, 310 14th Street in Oakland, California**

    *(description of reasons for liability):*
NEGLIGENT HIRE, SUPERVISION, TRAINING, AND RETENTION

Plaintiff herein incorporates by reference any and all preceding allegations as pled fully herein. At all times alleged herein, each of the above-named Defendants owned, operated, and managed the Gallery Art Bar. Each Defendant was acting as the agent and representative of each remaining Defendant. As such, on 04/17/2021, Defendants owed a duty of care to patrons at the Gallery Art Bar, including Plaintiff Berte - a patron. Defendants owed a duty to Plaintiff to conduct their bar in a reasonable manner, including taking reasonable steps to prevent foreseeable criminal acts of third parties; a special duty to Plaintiff to take reasonable steps to avert impending assault and dangers that Defendant's security has actual notice of; and a duty to take reasonable security measures to provide security for a club that Defendants knew was in a high crime area known for recent gun violence, shootings, and homicides.

Defendants hired the security staff and bar employees that Defendants knew were unfit and/or incompetent to maintain safety in the bar, including unfit to prevent patrons from entering the bar with guns; unfit to to conduct adequate security procedures and protocols; and unfit to search the persons and purses of patrons. Defendants knew that the incompetence of its staff and security personnel created a risk of harm to its patrons due to the bar being in a high crime area, prior firearm shootings and homicides taking place in the bar and on the same city block.

As a legal and proximate result of Defendants' actions and omissions, Plaintiff Berte was harmed. Plaintiff was severely wounded inside the bar and shot approximately 10 times by live rounds from a firearm throughout his body. The firearm was fired by another patron in the bar. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries in that Plaintiff would not have been shot and injured had Defendants' staff and employees been competent at performing their duties. Plaintiff sustained personal injuries, including hospitalization, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress, all in an amount to be proven at trial.

Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001(2) [Rev. January 1, 2007]      **CAUSE OF ACTION—General Negligence**      Code of Civil Procedure 425.12<br>www.courtinfo.ca.gov

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT D**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW



<u>**CERTIFIED MAIL**</u>
<u>**RETURN RECEIPT REQUESTED**</u>
<u>**& REGULAR MAIL**</u>

January 26, 2022

Brett Badelle
3435 Henrietta St
Oakland, CA. 94601

RE:     Our Insured:     Brett Badelle dba The Badelle Group Inc
        Claim#:          NXTC-CAGL-4R37YC
        Date of loss:    April 17.2021
        Plaintiff:       Mamoud Berte

Dear Brett:

We have received copies of suit papers that have been filed against you.  I'm sure you are aware that, realistically, an insurance policy cannot be written to cover every possible exposure.  When there is an accident or occurrence, we have to look at the language of the policy and the facts of the case to find out whether coverage applies.  Sometimes a question arises about whether the policy applies to the particular situation.

We have carefully reviewed the facts and circumstances of your claim. Unfortunately, we find that your policy Commercial General Liability Coverage Form does not provide coverage for you in this case.

The facts as outlined in the suit show that a patron of your establishment was shot.In the petition, the Plaintiff is alleging First Cause of Action – General Negligence, Second Cause of Action – Premises Liability and Third Cause of Action – General Negligence.  Your policy specifically excludes Assault and Battery.

In order to understand why the company is taking this position, please refer to your policy Commercial General Liability Coverage Form, CG 00 01 04 13:

**SECTION 1-COVERAGES**

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured be-
         comes legally obligated to pay as damages be-
         cause of "bodily injury" or "property damage" to
         which this insurance applies.  We will have the



right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage"

occurs during the policy period

Please note this endorsement on your policy –

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART A.
The following is added to SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, paragraph 2. Exclusions:
**Assault and Battery**
"Bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery."
This exclusion applies regardless of the degree of culpability or intent and without regard to:



(1) Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly or indirectly:
(a) At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents or servants;
(b) By the insured's customers, patrons or guests;
(c) By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or
(d) By any other person or entity, by any means or cause whatsoever;

(2) The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers," agents or servants, in the hiring, employment, investigation, training, supervision, retention, placement or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or
(3) The act, error or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:
(a) Prevent, bar, suppress, or halt an "assault and battery" by any person;
(b) Provide an environment safe from "assault and battery" by any person; or
(c) Warn of the dangers of the environment that could contribute to an "assault and battery" by any person

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery":
(a) Emotional distress;
(b) One or more of loss of society, companionship, services, consortium, and income;
(c) Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or
(d) Any obligation to share damages with or repay a person who, or any entity that, must pay damages because of the "bodily injury" or "property damage."

E. The following is added to **SECTION V – DEFINITIONS**: "Assault and battery" means one or more of the following:
a. Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence;
b. Harmful or offensive contact between or among two or more persons;
c. Apprehension of harmful or offensive contact between or among two or more persons;
d. Threats or abuse by words, acts, gestures, or deeds;
e. Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and
f. Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) a., b., c., d., or e., above



Now refer to;
**SECTION V- DEFINITIONS**

**3. "Bodily injury"** means bodily injury, sickness or
disease sustained by a person, including death re-
sulting from any of these at any time.

**4. "Coverage territory"** means:

    **a.** The United States of America (including its
territories and possessions), Puerto Rico and
Canada;

    **b.** International waters or airspace, but only if the
injury or damage occurs in the course of travel
or transportation between any places included
in **a.** above;  or

    **c.** All other parts of the world if the injury or dam-
age arises out of:

        **(1)** Goods or products made or sold by you in
the territory described in **a.** above;

    **(2)** The activities of a person whose home is in
the territory described in **a.** above, but is
away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses
that take place through the Internet or simi-

lar electronic means of communication

provided the insured's responsibility to pay dam-
ages is determined in a "suit" on the merits, in the
territory described in **a.** above or in a settlement
we agree to.

**13.**    **"Occurrence"** means an accident, including continuous or repeated exposure to
substantially the same general harmful conditions



17.    **"Property damage"** means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
For the purposes of this insurance, electronic data is not tangible property.
As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

We will be unable to provide monies to compensate the claimant for their claim.  Similarly, it appears we will have no defense cost coverage in defense of this lawsuit.

Note, however, please advise us if the Complaint is ever amended to include new or revised allegations so we can review them to see if coverage is afforded for them.

It is possible that there are additional reasons why coverage would not apply.  Neither this letter nor any act by any representative of Next Insurance should be construed to be a waiver of any of the policy terms and conditions; on the contrary, we specifically reserve our right to rely on the policy language, and to deny coverage for any valid reason that may appear.

In view of the fact that Next Insurance cannot provide coverage for you under the Commercial General Liability Coverage Form, you may wish to consult your own attorney at your expense to advise you with regard to your potential legal liability to the claimant.

If you have any other liability insurance policies, by the way, we strongly suggest that you report this claim to such other insurers even if you think those policies would not apply to this case.  Let them review the facts and tell you whether their coverage applies.

State National Insurance US Company reserves the right under the Policy and applicable law to cite additional policy provisions and coverage defenses as may be appropriate. This letter should not be construed as a waiver of any known or unknown defense that we may have under the Policy, nor does this letter waive or change any



provisions or conditions in the Policy. This letter is premised upon information we currently have available to us and upon the terms and conditions of the Policy.

If you have any questions about this letter, please give me a call. I would be happy to discuss this case with you or your attorney if you wish.

Sincerely,

Susan Smith CPCU, AIC-M, AINS
Claims Specialist
Phone: 512-399-9467
email:  susan.smith@nextinsurance.com

**The state of CA requires us to inform you of the following** For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT E**



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  JOEL H. SIEGAL (SBN 117044)
   joelsiegal@yahoo.com
2  RICHARD L. RICHARDSON (SBN 250676)
   richard@rrichardsonlaw.com
3  LAURA A. BANDLER (SBN 388828)
   laura@siegalrichardsonlaw.com
4  **SIEGAL & RICHARDSON, LLP**
   436 14th Street, Suite 1106
5  Oakland, California 94612
   Telephone:    (510) 271-6720
6  Facsimile:    (510) 500-9512

7  Attorneys for Plaintiffs MAHMOUD BERTE

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                      **COUNTY OF ALAMEDA**
9

10  MAHMOUD BERTE;                        Case No.: 21CV003753
                  Plaintiff,
                                          **FIRST AMENDED COMPLAINT:**
11         v.
                                             1)  **NEGLIGENCE;**
12  JANE YOON (professional Realty Pro); JY   2)  **NEGLIGENCE PER SE; OMC**
    ATHOL, LLC; JANE HJ YOON                      **5.12; PC 372;**
13  FOUNDATION; FABIAN AND BADELLE          3)  **NEGLIGENT HIRING,**
    LLC DBA 310 GALLERY; THE GALLERY            **SUPERVISION, AND**
14  ART BAR; JY 14TH STREET LLC; BRETT         **RETENTION;**
    BADELLE; THE BADELLE GROUP INC.;       4)  **PREMISES LIABILITY;**
15  CALIFORNIA DEPARTMENT OF               5)  **INTENTIONAL INFLICTION OF**
    ALCOHOLIC BEVERAGE CONTROL;               **EMOTIONAL DISTRESS;**
16  CITY OF OAKLAND; and DOES 1-100,       6)  **NEGLIGENT INFLICTION OF**
    inclusive,                                **EMOTIONAL DISTRESS;**
17                                          7)  **PUBLIC NUISANCE**
                  Defendants.                  **INJUNCTIVE RELIEF (CC**
18                                             **§3479);**
                                            8)  **ASSAULT AGAINST DOE 1**
19                                             **ASSAILANT;**
                                            9)  **PECULIAR RISK DOCTRINE;**
20                                         10)  **NEGLIGENT UNDERTAKING;**
                                           11)  **FRAUD;**
21                                         12)  **NEGLIGENCE AGAINST CITY**
                                               **OF OAKLAND;**
22                                         13)  **NEGLIGENCE AGAINST**
                                               **CALIFORNIA DEPARTMENT OF**
23                                             **ALCOHOLIC BEVERAGE**
                                               **CONTROL;**
24                                         14)  **VIOLATION OF BUS. & PROF.**
                                               **CODE 24200(A) CONDITION**
25                                             **CONTRARY TO PUBLIC**
                                               **WELFARE AND MORALE**
26

27                                         **JURY TRIAL DEMANDED**

28

                                    1
                        FIRST AMENDED COMPLAINT

1.	This case involves a near fatal shooting that occurred at the Gallery Art Bar on April 17, 2021, which left Plaintiff Mahmoud Berte (hereinafter "Plaintiff"), a 23-year-old Marine Corp veteran, with at least ten bullet holes in his body. Mr. Berte health and life will never be the same. As a result of the gunshot wounds and failure of Defendants to provide adequate bathroom facilities, adequate security measures, and/or adequate emergency medical response measures, Plaintiff has had over a dozen surgeries; his left leg has been amputated; his right leg now has significant plates and screws in it; and he must use a colostomy bag. In short, Plaintiff went from being an honorably discharged Marine Corp veteran with a bright future to, sadly, a significantly disabled person, concerned about his ability to earn a living and proceed with life after this traumatic event.

2.	The facts of this case will confirm that the street the Gallery Art Bar is located on is amongst the most dangerous and violent streets in West Oakland. Statistics confirm that violent crime within the police beat where the Gallery Art Bar is located (04X) is equal to over 300% of other areas in the City of Oakland. In 2019 alone, there were thirty-six homicides in police beat 04X. Even as of this filing, the Gallery Art Bar has two bullet holes in its front window. Within four years before this shooting, two patrons were shot and killed in an art gallery across the street from the Gallery Art Bar. On information and belief, there was a shooting in the business next door to Defendant's in the year prior to the shooting. Following the filing of this case, there have been two other reported shootings on the block where the Gallery Art Bar is located. First, security guard Kevin Nishita was shot and killed on November 28, 2021 on 14th Street near Defendant's bar and building. Next, on June 17, 2022, a bystander was killed in a shooting outside of the Halftime Sports Bar, located immediately next door to Defendant's bar and building.

3.	As a direct and foreseeable consequence of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff sustained serious physical injuries, severe emotional injuries, as well as economic losses, as set forth below.

**JURISDICTION AND VENUE**

4.      This Court has jurisdiction over this matter pursuant to Code of Civil Procedure §395, because, at all time relevant herein, Defendants, and each of them, resided in and/or did business in the State of California and the events which combined to produce the injuries sustained by Plaintiff occurred in the County of Alameda, in the State of California.

5.      Venue is proper in the County of Alameda because a substantial part of the events, acts, omissions, and/or transactions complained of herein occurred in and/or originated from Alameda County, in the State of California. The amount in controversy exceeds the jurisdictional minimum of this court.

**THE PARTIES**

**Plaintiff**

6.      Plaintiff Mahmoud Berte is a natural person who is and at all times relevant to this claim was a resident of San Francisco, California. Mahmoud is a United States Marine Corp veteran. After serving overseas tours, Plaintiff and his fiancé Tessa Reiter moved to San Francisco to begin his life. Mahmoud was unfamiliar with the Bay Area. He had never before been here. He planned on commencing City College in San Francisco and ultimately transferring to a more prestigious university. Attached as **Exhibit A** are photographs of Mahmoud Berte in his Marine Corp days, as well as a photograph of him in the hospital after being shot in the incident that is the subject of this action.

**Defendants**

8.      Plaintiff is informed and believes and thereon alleges that Defendant Jane Yoon (professional Realty Pro) is a business organization form unknown. On information and belief, Jane Yoon (professional Realty Pro) is the owner of the building located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant Jane Yoon leases space to the Gallery Art Bar and had regular conversations about the management and operation of the Gallery Art Bar.  Defendant received updates of the Bar not only from Defendant Badelle and his entities but also from the Planning Department of the City of Oakland and the California Department of Alcoholic Beverage Control ("ABC").

9.      Plaintiff is informed and believes and thereon alleges that Defendant JY Athol, LLC is a business organization form unknown. On information and belief, JY Athol, LLC is the owner of the building located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant JY Athol, LLC leased space to the Gallery Art Bar and had regular conversations about the management and operation of the Gallery Art Bar. Defendant received updates of the Bar not only from Defendant Badelle and his entities but also from the Planning Department of the City of Oakland and the ABC.

10.      Plaintiff is informed and believes and thereon alleges that Defendant Jane HJ Yoon Foundation is a business organization form unknown. On information and belief, Jane HJ Yoon Foundation is the owner of the building located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant Jane HJ Yoon Foundation leased space to the Gallery Art Bar and had regular conversations about the management and operation of the Gallery Art Bar. Defendant received updates of the Bar not only from Defendant Badelle and his entities but also from the Planning Department of the City of Oakland and the ABC.

11.      Plaintiff is informed and believes and thereon alleges that Defendant JY 14th Street LLC is a business organization form unknown. On information and belief, JY 14th Street LLC is the owner of the building located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant JY 14th Street LLC leased space to the Gallery Art Bar and had regular conversations about the management and operation of the Gallery Art Bar. Defendant received updates of the Bar not only from Defendant Badelle and his entities but also from the Planning Department of the City of Oakland and the ABC.

12.      Defendants Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon Foundation; JY 14th Street LLC, as defined above in paragraphs eight (8) through eleven (11) above, will hereinafter be collectively referred to as the "Yoon Defendants."

13.     Defendant Brett Badelle is the lessor of the property located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. He is also listed as the sole managing member of Fabian & Badelle LLC.

14.     Plaintiff is informed and believes and thereon alleges that Defendant Fabian & Badelle LLC dba 310 Gallery is a business organization form unknown. On information and belief, Fabian and Baddelle LLC dba 310 Gallery leases and/or manages the building located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant Fabian and Badelle LLC dba 310 Gallery owned, operated, and controlled the location, including having regular conversations about the management and operation of the Gallery Art Bar.

15.     Plaintiff is informed and believes and thereon alleges that Defendant The Gallery Art Bar is a business organization form unknown. On information and belief, The Gallery Art Bar leases and manages the property located at 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant The Gallery Art Bar owned, operated, and controlled the location, including having regular conversations about the management and operation of the Gallery Art Bar.

16.     Plaintiff is informed and believes and thereon alleges that Defendant The Badelle Group, Inc. is a California corporation. Its principal office is listed as 310 14th Street, Oakland, CA 94612 and its Chief Executive Officer is Defendant Brett Badelle. On information and belief, The Badelle Group, Inc. leases and/or manages 310 14th Street in Oakland, which is where the Gallery Art Bar is located. On information and belief, Defendant The Badelle Group, Inc. had regular conversations about the management and operation of the Gallery Art Bar. The Badelle Group, Inc. is a named insured in the policy the covers the lessors of the property located at 310 14th Street in Oakland.

17.     Defendants Brett Badelle; Fabian & Badelle LLC dba 310 Gallery; The Gallery Art Bar; The Badelle Group, Inc., as defined above in paragraphs 13 through 16 above, will hereinafter be collectively referred to as the "Badelle Defendants."

18.    Plaintiff is informed and believes that all Badelle Defendants worked within the agency of each other.

19.    Plaintiff is informed and believes and thereon alleges that Defendant City of Oakland is a municipal organization that includes the Oakland Planning Commission that failed to properly investigate, enforce, or comply with the statutes articulated herein. Thereby, Defendant City was a substantial factor in causing Plaintiff's injuries.

20.    Plaintiff is informed and believes and thereon alleges that Defendant Alcohol Beverage and Control Commission is a governmental agency charged with the responsibility of determining applications for licenses to sell alcoholic beverages and regulating licensees in the State of California. that failed to properly investigate, enforce, or comply with the statutes articulated herein. Thereby, Defendant City was a substantial factor in causing Plaintiff's injuries.

21.    Defendant Doe 3 is Plaintiff's assailant. Doe 3 shot Plaintiff multiple times, thereby committing an assault and battery against Plaintiff, or negligently discharging his firearm.

C.    **Other Defendants**

22.    The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictious names pursuant to Code of Civil Procedure §474; Plaintiffs further allege that each of said fictious Defendants is in some manner responsible for the acts and occurrences hereinafter set forth. Plaintiffs will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible.

D.    **Agency & Concert of Action**

23.    At all times mentioned herein, Defendants, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership,

enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs as alleged herein.  In taking action to aid and abet and rendered substantially to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

### FACTS COMMON TO ALL CAUSES OF ACTION

24.    In an effort to beautify 14th Street in Oakland, the City gave 14th Street an honorary name of "Chauncey Bailey Way" and designated all of 14th Street as a "Black Historic District".

25.    Defendant Brett Badelle is a 40 something year old gentleman with deep political connections in Oakland. For example, Defendant is the Vice President of Finance of Black Young Democrats of East Bay; Case Manager of Men of Valor Academy; a former staff member for Assemblyman Tony Thurmond; advisor to the Mayor of Oakland; and worked in the Government Relations Office of Bay Area Rapid Transit (BART).

26.    The facts of this case will confirm that the street The Gallery Art Bar is located on is amongst the most dangerous and violent streets in West Oakland. Statistics confirm that violent crime within the police beat where The Gallery Art Bar is located (04X) is equal to over 300% of other areas in the city. In 2019 alone, there were thirty-six homicides in police beat 04X. Even as of this filing, The Gallery Art Bar has two bullet holes in its front window. Within four years before this shooting, two patrons were shot and killed in an art gallery across the street from The Gallery Art Bar.  Additionally, based on information and belief, there was a shooting in the business next door to The Gallery Art Bar in 2020.  Thereby, in April 2021, Defendants in this case had both actual and constructive knowledge that any bar serving liquor

at this location without adequately trained security personnel contributed to a dangerous condition in the area.

27.     Nonetheless, Defendant Badelle and the rest of the Badelle Defendants decided that they wanted to create a community-oriented art gallery and bar that sold alcohol in this location.  In doing so, however, Defendant instituted numerous substandard management ideas that led to Defendant negligently running the bar in a dangerous and/or reckless manner, including each of the following actions: (1) instituting poor security measures that caused a dangerous environment for patrons; (2) hiring non-trained security personnel that were incompetent managing crowds or preventing patrons from entering the bar with weapons; (3) maintaining inadequate emergency response policies for patrons that experienced medical issues such as Plaintiff; (4) failing to maintain working security cameras; (5) failing to provide his security detail with any instruments that could be used to detect patrons carrying dangerous weapons; (6) failing to enforce a no-weapons policy; (7) adopting a policy whereby Defendant's security guards were allowed to take cash from patrons in return for patrons being allowed to carry serious and/or dangerous weapons into the bar; and (8) failing to warn invitees of the dangerous condition inside and near of Defendant's bar.

28.     First, the Badelle Defendants chose to hire the homeless persons to be security guards. These "guards" were not formally trained and did not wear uniforms or have weapons. On information and belief, Brett Badelle won accolades from his woke community for hiring homeless persons to work as security guards for The Gallery Art Bar. However, Defendant failed to institute any policies for ensuring that the guards were trained on how to reduce safety risks to patrons; conduct weapons checks; diffuse volatile situations between patrons; keep clear unobstructed paths to the restrooms.  Defendant Badelle's substandard safety management policies, subjected patrons of the business such as Plaintiff Mahmoud Berte, to dangerous conditions of violence, including threats, fights, and shootings.  Further, Defendant committed each of these acts and omissions without warning patrons of the dangerous condition on the property.

29.    On or about April 17, 2021, Plaintiff Berte stood in line outside of the Gallery Art Bar and waited to be admitted into the bar.  While in line, Plaintiff observed Defendant Badelle's security guards take folded wades of cash from patrons in line in return for the security guards allowing patrons to be admitted to the bar without being subjected to a search for weapons.  Based upon Plaintiffs observations, this was an accepted practice for the security guards employed by Defendant Badelle.  Accordingly, Defendants, and each of them, knew and/or should have known that their negligent search for weapons would cause patrons in the bar to be subjected to a dangerous condition.

30.    Upon being admitted to the bar, Plaintiff walked the narrow crowded hallway in order to reach the men's bathroom.  Immediately upon entering the bathroom, Plaintiff observed that the bathroom was small, cramped, and barely wide enough for one person to enter.  Just behind Plaintiff, another male entered the bathroom.  The unknown male crowded into Plaintiff such that Plaintiff told the male, "Get out, only one of us can fit."  The male exited the bathroom.

31.    Upon exiting the bathroom and entering the hallway, Plaintiff heard several gun shots and felt pain. Plaintiff did not have an argument, dispute, disturbance, and/or fight with any other person.  Thus, on information and belief, the unknown assailant mishandled a semiautomatic firearm negligently causing it to discharge at least 10 rounds that struck Plaintiff Berte.  As a result, Plaintiff suffered serious personal injuries.

32.    Plaintiff's injuries were caused by Defendant Badelle and his partners, including the Badelle Defendants and Yoon Defendants, hiring homeless persons to perform security duties when said persons were not provided adequate training, license, bonding, or equipment; and, the Badelle Defendants and Yoon Defendants failing to put adequate security protocols and security procedures in place such that the security guards were allowed to accept money in return for permitting patrons to bypass weapons searches.  Additionally, the Badelle Defendants and the Yoon Defendants did not maintain adequate policy or procedures for responding to the foreseeable emergency medical needs of patrons in the facility such as

1    Plaintiff.  Accordingly, after the shooting, Plaintiff was left for an extended amount of time

2    without medical treatment.

3        The initial question is how an armed assailant was able to enter a bar with a loaded

4    pistol, when there was supposed to be adequate security at The Gallery Art Bar. In essence,

5    hiring homeless persons to run a security detail without properly interviewing them, training

6    them, or equipping said persons with metal detector tools to conduct sweeps for firearms is a

7    violation of a duty of care each of the Badelle Defendants and Yoon Defendants owed to

8    patrons such as Berte.

9        A.    Even as significant to the question of allowing the assailant into the Bar,

10    the lack of training and supervision of security guards was consequential ***after*** the

11    shooting. Homeless security guards were unable to manage the crowd following the

12    shooting. This failure to manage the crowd led to increased response time from

13    emergency responders. Homeless "security officers" employed by the Badelle

14    Defendants and Yoon Defendants attempted to administer aide to Berte and, on

15    information and belief, such efforts by employees of Defendants' worsened and

16    aggravated the condition of Plaintiff Berte.

17        B.    Also, the hiring of "homeless security guards," and the fact that they

18    were in charge of the Bar, led to a sense of panic and despair. As bar patrons manically

19    fled the scene, Berte lay bleeding. The "homeless security guards" lack of emergency

20    response preparedness (both before and following the shooting) led to increased and

21    aggravated medical and psychological trauma to Plaintiff Berte.

22    **Defendant Yoon**

23        C.    On information and belief, Defendant Jane Yoon and each of her entities

24    listed herein as defendants, had both actual and constructive knowledge of Badelle's

25    unorthodox methods in business, such as hiring "homeless security guards." Despite her

26    knowledge of that fact, combined with her knowledge of the dangerous propensity of

27    the neighborhood in which her building was located, Yoon stood silently by, while her

28

property was allowed to become a shooting gallery that ultimately took out Plaintiff Berte.

33.    The second unique management idea that Defendant Badelle had was creating an ambiance that made it difficult for emergency responders such as police, ambulance, and others to efficiently enter the Bar.

A.    There are two types of ambiance that The Gallery Art Bar created that contributed to or caused this accident.

B.    First, in creating an "art gallery bar" in Oakland's most violent neighborhood, the Badelle Defendants and Yoon Defendants created a dangerous condition upon the property. To add to that ambiance, The Gallery Art Bar often sponsored events that were anti-police, pro-gangsta, and served as a magnet for violent extreme gangbangers. While The Gallery Art Bar certainly has a constitutionally protected First Amendment right to present exhibits that are anti-police and pro-gang, the Badelle Defendants and Yoon Defendants created an ambiance in The Gallery Art Bar which welcomed gangsters and "disinvited" police and other authorities.  The Badelle Defendants and Yoon Defendants did not warn their guests that a dangerous condition existed upon the property.  On information and belief, the assailant of Berte was one of the "gangbangers" who had been attracted to the Bar/Gallery by their anti-police pro-gangsta ambiance, which was specifically created by Defendants herein, as such police response was slower.

C.    Another example of ambiance created by Defendants here is the manner that Defendants arranged furniture in The Gallery Art Bar on the evening of the incident. On information and belief, furniture, tables, and chairs in the Bar were so scattered and disorganized that when police and other emergency responders finally arrived, they were delayed in reaching Plaintiff. On information and belief, that delay added to or aggravated Plaintiff's injury, and each of the Badelle Defendants and Yoon Defendants were involved in this.

**Defendant Yoon**

D.     On information and belief, Defendant Jane Yoon and each of her entities listed herein as defendants, had both actual and constructive knowledge of the Badelle Defendants' unorthodox methods in business, such as was creating an ambiance that made it difficult for emergency responders such as police, ambulance, and others to efficiently enter the Bar. Despite her knowledge of that fact, combined with her knowledge of the dangerous propensity of the neighborhood in which her building was located, the Yoon Defendants stood silently by, while their property was allowed to become a shooting gallery that ultimately injured Plaintiff Berte.

34.     The third unique management idea that the Badelle Defendants had was encouraging or allowing gangbangers and other criminals to use the Bar for the restroom.

A.     As further part of their unorthodox management style, the Badelle Defendants allowed gangbangers and other criminals into the Bar/Gallery to use the bathroom. In an effort to garner continued "community" support, the Badelle Defendants encouraged ongoing relationships with gangbangers and other criminals in the neighborhood. As part of that "charm" offensive, the Badelle Defendants chose to do nothing to offend or regulate the gangsters and criminals that used The Gallery Art Bar. From all the events and showings at The Gallery Art Bar, gangbangers and gangsters knew that they had an ally in the anti-police pro-gang gallery. Facts in this case will confirm that prior to this incident, the Badelle Defendants never reached out to the police to create an alliance that police patrol the block regularly. Instead, the Badelle Defendants' alliance was with the gangs or gangbangers that ultimately shot Plaintiff Berte. The Badelle Defendants invited them, and encouraged them to use the Bar/Gallery for restrooms.

**Defendant Yoon**

B.     On information and belief, Defendant Jane Yoon and each of her entities listed herein as defendants, had both actual and constructive knowledge of Badelle's unorthodox methods in business, such as encouraging or allowing gangbangers and

other criminals to use the Bar for the restroom. Despite her knowledge of that fact, combined with her knowledge of the dangerous propensity of the neighborhood in which her building was located, Yoon stood silently by, while her property was allowed to become a shooting gallery that ultimately took out Plaintiff Berte.

35.    The fourth unique management idea that the Badelle Defendants had was failing to install working security cameras.

A.    Everyone knowns that security cameras have a deterrent effect on crime. However, on information and belief, the Badelle Defendants did not maintain working cameras on the property.  On information and belief, one of the Badelle Defendants' unorthodox management techniques was to advise patrons and gangsters that his security cameras did not work. This completely eliminated the deterrent effect of any security cameras the Badelle Defendants may have had in place, thereby further creating a dangerous environment.

B.    The Badelle Defendants, in attempting to create a "zone of safety and privacy for criminals and gang members" in Oakland, advised that security cameras at the Bar were non-operable. By specifically advising assailants of such, the Badelle Defendants was effectively advising assailants such as the one who assaulted Plaintiff Berte that they have free range to enter the Bar and cause mayhem.

C.    In addition, the lack of security cameras in the Bar also aggravated Plaintiff's injuries. By failing to ascertain specifically where and how bullets entered Plaintiff's body, medical personnel were inhibited and Berte's condition was aggravated, all in an amount to be proven at trial.

**Defendant Yoon**

D.    On information and belief, Defendant Jane Yoon and each of her entities listed herein as defendants, had both actual and constructive knowledge of Badelle's unorthodox methods in business, such as failing to install working security cameras. Despite her knowledge of that fact, combined with her knowledge of the dangerous propensity of the neighborhood in which her building was located, Yoon stood silently

by, while her property was allowed to become a shooting gallery that ultimately injured Plaintiff Berte.

36.    The fifth unique management idea that the Badelle Defendants had was failing to check identification before entry to the Bar.

A.    As part of the Badelle Defendants' unorthodox management style, valid identification cards were not checked at the door. On information and belief, in keeping with his effort to create a community friendly for criminals and anti-police sentiments, the Badelle Defendants instructed their homeless security guards that they need not check identification on the way into the Bar.

B.    Aside from possibly allowing minors into the Bar (it is unknown whether the assailant here was a minor), failing to check identification also creates an ambiance which causes or aggravates dangerous conditions in a bar, all of which were created long before Plaintiff entered the Bar.

C.    The failure to check identification on the way into the Bar allowed the assailant to escape. As such, Berte's injuries were aggravated, in an amount to be proven at trial, as Doe Defendant 4, Berte's assailant, was not able to provide information to officers which would have been helpful in the treatment of Plaintiff.

**Defendant Yoon**

D.    On information and belief, Defendant Jane Yoon and each of her entities listed herein as defendants, had both actual and constructive knowledge of Badelle's unorthodox methods in business, such as failing to check identification before entry to the bar. Despite her knowledge of that fact, combined with her knowledge of the dangerous propensity of the neighborhood in which her building was located, Yoon stood silently by, while her property was allowed to become a shooting gallery that ultimately took out Plaintiff Berte.

37.    The sixth unique and unorthodox management idea that the Badelle Defendants had was failing to have warnings outside of The Gallery Art Bar.

A.    A review of The Gallery Art Bar on 14th Street is almost an open invitation to enter the Bar with a handgun. Nowhere on the entrance nor anywhere does management condone gangbangers or drug dealers. Nowhere is there a sign or other warning advising "guns not allowed." Instead, the Badelle Defendants and Yoon Defendants created a culture of gangster rules and defund the police. This ambiance, specifically created by the Badelle Defendants and Yoon Defendants, caused or aggravated the assault and also the response by police, which aggravated Plaintiff's injuries, in an amount to be proven at trial.

**Defendant Yoon**

B.    On information and belief, the Yoon Defendants had both actual and constructive knowledge of the Badelle Defendants' unorthodox methods in business, such as failing to have warnings outside of The Gallery Art Bar. Despite their knowledge of that fact, combined with her knowledge of the dangerous propensity of the neighborhood in which her building was located, the Yoon Defendants stood silently by, while their property was allowed to become a shooting gallery that ultimately took out Plaintiff Berte.

38.    Prior to this assault, The Gallery Art Bar was not in compliance and had Notices of Violation ("NOVs") and violations regarding permit B1705022; E1704630; and P1703566. At the same time that the City of Oakland ("the City") advised Defendant Badelle of his lack of compliance, the City also notified Matthew Querning (510-625-0100), attorney for Defendant Yoon. A report from the City of Oakland confirms that the City called Yoon's attorney to advise her that her tenant Brett Badelle had contacted the City regarding expired permits, and further per Oakland Municipal Code, the property owner of record (Yoon) is responsible for all violations on the property.

39.    On information and belief, permits B1705022; E1704630; and P1703566 were expired and needed to be renewed. Those items were to update restrooms and add a hallway and bar area in the gallery, per PLN16452. On information and belief, each of the Badelle Defendants and Yoon Defendants were of aware of this.

40.    Had each of the Badelle Defendants and Yoon Defendants acted upon the permits while still active, this incident, or its aftermath, would not have occurred or would have been substantially less serious.

41.    On the night of the incident, on information and belief, the assailant was in the restroom with Plaintiff Berte.  Due to the layout of the Gallery Art Bar, the restroom was too small and cramped for more than one patron to use it at a time.  Further, since Defendants failed to do the work required in the above permits, assisting Plaintiff following the incident became more difficult and aggravated Plaintiff, in an amount to be proven at trial. In fact, the conditional permit issued by ABC on May 3, 2017 was not valid.

42.    The City of Oakland continues to cite Defendant Badelle and Defendant Yoon for ongoing nuisance abatement fees. On information and belief, as of September 30, 2019, Defendants including Yoon and Badelle, owed $21,000.00 in fees and fines to the City for: ongoing unpermitted events; nuisance case fee; and fee assessment notice. By continuing to flaunt its apparent status as a business that flaunts the police, and rules, Defendants, and each of them, knew of the dangerous ambiance created by each Defendant.

43.    On information and belief, the Badelle Defendants and Yoon Defendants had opportunities prior to the Berte incident to install better lighting both inside and outside of the Bar. Better lighting would have created a deterrent so that the assailant would not have entered the Bar. In addition, the lighting created a level of confusion both at the time of the shooting and following, which aggravated Plaintiff's injuries, in an amount to be proven at trial.

44.    The Badelle Defendants and Yoon Defendants, and each of them, consistently violated the following Oakland provisions, as confirmed by letter of the City of Oakland to both The Gallery Art Bar and Jane Yoon, indicating that Defendants were in violation of rules. A portion of that letter is quoted:

Dear Business Operator/Owner:

Our office has received information that your facility at 310 14th St. is holding events that are unpermitted. This letter is intended to inform you about permits which are required for events held

16

throughout the City of Oakland. **No event should happen until you have contacted the following departments and obtained all necessary permits.**

- **Special Events Permits:** Contact Officer Nguyen or Sgt. McNeil at 777-8525 for details on obtaining permits pertaining to entertainment and street encroachment.

- **Cabaret Permit:** Nancy Marcus, Special Activity Permits 238-3294.

- **Fire Department:** Public Assembly Permits are issued by the Fire Prevention Bureau and can be reached at 238-3851. The OFD determines the occupancy load.

- **Planning/Zoning Department:** If your property is used for business purposes, you should have a zoning clearance identifying the activity taking place.

- **Business Tax Certificate:** All businesses in Oakland are required to have a Business Tax Certificate.

- **Alameda County Environmental Health Department:** Any event where food and beverages are served, you must have a health permit. You can contact them at 510-567-6700.
  Holding similar events without proper permits in violation of Oakland's Municipal Code may result in you being responsible for any police costs and traffic control fees related to shutting down any unpermitted event. You may also be subject to civil penalties as prescribed by the Oakland Municipal Code and civil prosecution under California's nuisance abatement statutes.

Creating such a lack and laissez faire attitude was obviously a poor management decision for Defendants.

45.    The Yoon Defendants knew and were consistently aware of defects and notices of non-compliance with local rules from The Gallery Art Bar. For example, Jane Yoon received a thirty-day notice to abate and declaration of public nuisance – for Gallery Art Bar operating illegally as a cabaret. As such, the Yoon Defendants, and each of them, violated Oakland Municipal Code Chapter 5.12. As such, each Defendant is negligent per se, and the violation of that statute created an ambiance where assault and battery were almost required in such lawlessness.

46.    As part of its application for licensure, Fabian and Badelle wrote on December 21, 2016:

**Public Safety & Security**

The business will always have a door person during operating hours, on post until thirty minutes after the close of business. Most nights we will have at least two licensed guards. Guards will be expected to monitor guests as well as work with other Cabarets to deter loitering and ensure safe passage for residents and those walking by.

Our professional security personnel will be licensed and equipped with an ID scanner that has the ability to verify each guest's identity and highlight issues with potential problem guests.

We have several Hi-Definition security cameras on the interior and exterior of the building, which we have already been enrolled in the City of Oakland's security camera database.

**Commitment to community & Law Enforcement**

Before converting this Art Gallery to accommodate a bar, we demonstrated our unwavering commitment to community, by volunteering our time and space as a hub of artistic and cultural growth.

As a result of our longstanding leadership in other areas and capacities in Oakland, our company Fabian & Badelle, LLC was asked by the city of Oakland to serve as their for profit business partner for the Oakland Black Cultural Arts and Business District (aka the Black Arts Movement and Business District (BAMBD).

We have already presented our project to our local Neighborhood Council and have received their full support for the project. We will be meeting with our council office and area Commander to review our safety plan on April 19, 2017 and anticipate working collaboratively with our local police department to ensure the highest level of safety, without increasing the burden of the police department's hardworking officers.

1    These statements are deliberate falsehoods and misrepresentations made by Defendants,

2    and each of them, in order to deceptively secure licensing. Had Defendants not fraudulently

3    completed their applications, Plaintiff would not have been at the Bar that evening.

4    47.    On information and belief, Defendants, and each of them: "(1) allowed a person

5    on the premises [the assailant] who has a known propensity for fighting; (2) the Bar keeper

6    allowed a person [the assailant] to remain on the premises whose conduct had become

7    obstreperous and aggressive to such a degree the Bar keeper knew or ought to have known he

8    endangered others; (3) the Bar keeper had been warned of danger from an obstreperous patron

9    (the assailant) and failed to take suitable measures for the protection of others; (4) the Bar

10    keeper failed to stop a fight as soon as possible after it started; (5) the Bar keeper failed to

11    provide a staff adequate to police the premises; and (6) the Bar keeper tolerated disorderly

12    conditions." *Saatzer*, *supra*, 122 Cal. App. 3d at 518; see also *Slawinski v. Mocettini* (1963)

13    217 Cal. App. 2d 192, 196.

14    The above conditions led to an unambiguous "no rules apply" attitude fostered by all

15    Defendants. Such a "no rules attitude" led initially to anarchy, and the anarchy and the notice to

16    the community that anything goes at The Gallery Art Bar was ultimately what led to the

17    shooting, and what caused an inability to effectively deal with Berte's damages following the

18    attack by failing to have first aide, emergency procedures, and licensed persons to administer

19    aid.

20    48.    **Negligent Undertaking**

21    As alleged herein, The Gallery Art Bar had a security guard. Jane Yoon knew that fact.

22    Clearly, the fact that there was a security guard (even though it was a homeless person)

23    demonstrates that the Badelle Defendants and Yoon Defendants, and each of them attempted:

24

25    This negligent undertaking doctrine (sometimes referred to as the "Good Samaritan" rule, but in actuality an exception to that rule) is reflected in Restatement Second of Torts, sections 323 and 324A. Section 323 addresses cases concerning a duty assumed by a defendant to another. (See *Williams v. State of California* (1983) 34 Cal. 3d. 18, 23; see also *Blankenship v. Peoria Park Dist.* (Ill. Ct. App. 1994) 647 N.E. 2d. 287, 291-292 [swimming pool operator undertook duty to provide lifeguard to protect adult swimmer]; *Feld v. Merriam* (Pa. 1984) 485 A.2d 742, 746-747

26

27

28

19

1

2

3

4

5

[apartment complex landlord undertook duty to provide security guards]; *Wilson v. Texas Parks and Wildlife Dept.* (Tex. 1999) 8 S.W. 3d. 634, 635-636 [park district undertook to provide siren warning of impending flood]; *Nelson by and Through Struckman v. Salt Lake City* (Utah 1996) 919 P.2d 568, 573 [state undertook to erect and maintain a fence between park and nearby river].) Similarly, section 324A of the Restatement addresses cases concerning a duty assumed by a defendant to third persons. (See *Paz v. State* (2000) 22 Cal. 4th 550, 559; *Artiglio v. Corning, Inc.* (1998) 18 Cal. 4th 604, 613-614).

6

7

8

Here, negligent undertaking led to a false sense of security by Plaintiff. That false sense of security led him to "lower his guard" that evening. Rather than acting like a trained combat veteran, Berte was lulled into a false sense of security by Defendants, and each of them.

9

10

11

12

13

14

15

16

17

49.    As explained by the California Supreme Court in *Ann M.*, 6 Cal. 4th 666; *Sharon P.*, 21 Cal. 4th 1181; and *Delgado v. Trax Bar and Grill*, 36 Cal. 4th 224, only when "heightened" foreseeability of third party criminal activity on the premises exists – shown by similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location – does the scope of a business proprietor's special relationship based duty include an obligation to provide guards to protect the safety of patrons. *Ann M.*, *supra* 6 Cal. 4th at 679 and fn. 7; *Sharon P.*, *supra* 21 Cal. 4th at 1190-1191; 1197-1198. In the case before us, there clearly was that "heightened" level of foreseeability of third party criminal activity on the premises.

18

19

20

21

22

23

24

25

26

50.    This case is about a near fatal shooting that occurred at the Gallery Art Bar on April 17, 2021, which left Mahmoud Berte, a 23-year-old Marine Corp veteran, with at least ten bullet holes in his body on that fateful horrible night. Berte (hereinafter "Plaintiff") and his life will never be the same. As a result of the gunshot wounds he sustained as a patron of the Gallery Art Bar, he has had over a dozen surgeries, his left leg has been amputated, his right leg now has significant plates and screws in it, and he must use a colostomy bag. In short, Plaintiff went from being an honorably discharged Marine Corp veteran with a bright future to, sadly, a significantly disabled person, concerned about his ability to earn a living and proceed with life after this traumatic event.

27

28

51.    The facts of this case will confirm that the street the Gallery Art Bar is located on is amongst the most dangerous and violent streets in West Oakland. Statistics confirm that

violent crime within the police beat where the Gallery Art Bar is located (04X) is equal to over 300% of other areas in the city. In 2019 alone, there were thirty-six homicides in police beat 04X. Even as of this filing, the Gallery Art Bar has two bullet holes in its front window. Within four years before this shooting, two patrons were shot and killed in an art gallery across the street from the Gallery Art Bar. On information and belief, there was a shooting in the business next door to Defendant's in the year prior to this shooting.

52.     On the evening of this incident, there were security guards patrolling the line of customers to enter the Gallery Art Bar, but the guards did not have metal wands nor did they appropriately check for weapons. Sometime in the evening, as plaintiff was leaving the men's room, an assailant shot plaintiff on at least ten occasions. As confirmed by the police report, a bartender that was present indicated to police that he believed there were at least four other guns in the Gallery Art Bar that night.

53.     All defendants owed a duty of care to plaintiffs. That duty was breached proximately harming plaintiffs in an amount to be proven at trial.

54.     The plaintiff in this case is Mahmoud Berte. Berte is 23 years old. He is a veteran of the United States Marine Corp. He has an honorable discharge from the Corp. He was starting school, and he had a very bright future ahead of himself.

55.     Tessa Reiter and Mahmoud Berte have been engaged to be married for three years. Prior to this incident, Mahmoud financially supported Tessa. Together they moved from the east coast to San Francisco, so that Mahmoud could begin school in San Francisco. They planned to be married. Now unfortunately their lives have been altered forever. Tessa now assists in cleaning the colostomy bag. She must assist Berte in getting into his wheelchair. They are unable to participate in other activities.

56.     At all times alleged herein, each of the above-named Defendants owned, operated, and managed the Gallery Art Bar. Each Defendant was acting as the agent and representative of each remaining Defendant. As such, on 04/17/2021, Defendants owed a duty of care to patrons at the Gallery Art Bar, including Plaintiff Berte - a patron. Defendants owed a duty to Plaintiff to conduct their bar in a reasonable manner, including taking reasonable steps

to prevent foreseeable criminal acts of third parties; a special duty to Plaintiff to take reasonable steps to avert impending assault and dangers that Defendant's security has actual notice of; and a duty to take reasonable security measures to provide security for a club that Defendants knew was in a high crime area known for recent gun violence, shootings, and homicides. Additionally, Defendants, and each of them, owed duties of care to not create a criminal clubhouse, disguised as an art gallery.

57.     Defendants hired the security staff and bar employees that Defendants knew were unfit and/or incompetent to maintain safety in the bar, including unfit to prevent patrons from entering the bar with guns; unfit to to conduct adequate security procedures and protocols; and unfit to search the persons and purses of patrons. Defendants knew that the incompetence of its staff and security personnel created a risk of harm to its patrons due to the bar being in a high crime area, prior firearm shootings and homicides taking place in the bar and on the same city block.

58.     As a legal and proximate result of Defendants' actions and omissions, Plaintiff Berte was harmed. Plaintiff was severely wounded inside the bar and shot approximately 10 times by live rounds from a firearm throughout his body. The firearm was fired by another patron in the bar both negligently, recklessly, and/or intentionally. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries in that Plaintiff would not have been shot and injured had Defendants' staff and employees been competent at performing their duties. Plaintiff sustained personal injuries, including hospitalization, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress, all in an amount to be proven at trial.

59.     At all times alleged herein, each of the above-named Defendants owned, operated, and managed the Gallery Art Bar. Each Defendant was acting as the agent and representative of each remaining Defendant. As such, on 04/17/2021, Defendants owed a duty of care to patrons at the Gallery Art Bar, including Plaintiff Berte - a patron. Defendants owed a duty to Plaintiff to conduct their bar in a reasonable manner, including taking reasonable steps

to prevent foreseeable criminal acts of third parties; a special duty to Plaintiff to take reasonable steps to avert impending assault and dangers that Defendant's security has actual notice of; a duty to take reasonable security measures to provide security for a club that Defendants knew was in a high crime area known for recent gun violence, shootings, and homicides.

60.    Defendants, each of them, breached these duties by allowing patrons with guns into the bar; failing to provide a safe bar; failing to conduct adequate security procedures and protocols, including failing to search the persons and purses of patrons; failing to use metal detectors to search patrons before entering the establishment; failing to operate security technology or systems; failing to prevent guns from entering the bar; and failing to enact a security policy to prevent guns from entering the bar.

61.    As a legal and proximate result of Defendants' actions and omissions, Plaintiff Berte was severely wounded inside the bar and shot approximately 10 times by live rounds from a firearm throughout his body. The firearm was fired by another patron in the bar. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries in that Plaintiff would have not been shot and injured had Defendants performed their duties. Plaintiff sustained person injuries, including hospitalization, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress, all in an amount to be proven at trial.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

### (Against All Defendants)

62.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

63.    Defendants negligently, carelessly, recklessly, and/or unlawfully maintained their property, so as to cause Berte's injuries, resulting in the complete destruction of Plaintiff's life.

64.     As a direct and legal result of the said wrongful conduct and/or omissions of Defendants, and each of them, Plaintiffs have sustained the destruction of their lives together.

65.     As a further direct and legal result of said wrongful conduct and/or omissions of Defendants, and each of them, Plaintiffs have suffered severe mental and emotional distress, pain and suffering, which continues to this day.

66.     As a further direct legal and proximate result of said wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff Berte was severely wounded inside the bar and shot approximately 10 times by live rounds from a firearm throughout his body. The firearm was fired by another patron in the bar. Defendants' actions and omissions were a substantial factor in causing Plaintiff's injuries in that Plaintiff would have not been shot and injured had Defendants performed their duties. Plaintiff sustained personal injuries, including hospitalization, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress, all in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### NEGLIGENCE PER SE

### (Against All Defendants)

67.     Plaintiff re-alleges and incorporates by reference each and every paragraph as though fully set forth herein.

68.     Defendants, and each of them, at all times mentioned, were under a statutory duty to comply with California Penal Code §352 and Oakland Municipal Code §51.2.

69.     On or around 2017, and continuing, Defendants violated California Penal Code §352 and Oakland Municipal Code §51.2 in that they maliciously and intentionally violated these two statutes.

70.     As a direct and legal result of said violation, Plaintiff suffered the harm hereinabove set forth.

71.     In doing the wrongful and intentional acts as herein alleged, Defendants acted with oppression, fraud, and malice and with conscious and willful disregard for the health,

24

safety and general welfare and rights of Plaintiff. Such action was done with malice, oppression and/or fraud and was and is despicable, shocking and offensive and entitles Plaintiff to an award of punitive damages against Defendants, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION, AND RETENTION

#### (Against All Defendants)

72.     Plaintiff re-alleges and incorporates by reference each and every paragraph as though fully set forth herein.

73.     Upon information and belief, Defendant hires, trains, supervises, and/or certifies employees to serve alcohol, manage The Art Gallery Bar, and provide security.

74.     Defendants were unfit and/or incompetent to perform the work for which he was hired, trained, supervised, and/or certified, and Defendants knew and/or should have known that Defendants were unfit and/or incompetent and that this unfitness and/or incompetence created a risk of harm to the lives and physical safety of Bar patrons, including but not limited to, Plaintiff Berte.

75.     As a direct and legal result of the said wrongful conduct and/or omissions of defendants, and each of them, Plaintiff suffered, and continued to suffer, damages here in above set forth.

76.     The officers, directors and/or managing agents of Defendants advanced knowledge that Defendants were causing serious harm at alarming rates during the provision of services to bar patrons. The officers, directors and/or managing agents of Defendants, and each of them, also had advanced knowledge that a failure to fix the problem would result in the probability of a catastrophic event, which foreseeably would lead to harm and/or injuries to Plaintiff, and to consumers generally, wherein consumers and/or Plaintiff would suffer personal injury and possibly death.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CAUSE OF ACTION**

**PREMISES LIABILITY**

**(Against All Defendants)**

77.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

78.    Defendants have a duty to maintain their property at the art gallery bar in a safe condition free of hazardous and dangerous conditions.

79.    Defendants had actual and constructive notice of the dangerous conditions on their property and in the art gallery bar as early as 2017 and possibly earlier period defendants have failed to maintain their bar and their property free of dangerous criminals, guns, and obvious risks to public health and safety. And, Defendant failed to warn invitees such as Plaintiff of the dangerous conditions upon the property.  As a result, Plaintiff was shot multiple times and sustained grave physical injury and almost death, in an amount to be proven at trial.

80.    As a direct and legal result of said violation, Plaintiff suffered the harm hereinabove set forth.

**FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

81.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

82.    As set forth above, the actions of Defendants were outrageous and demonstrated Defendants' complete disregard for Plaintiff.

83.    As set forth above, the actions of Defendants were reckless in that they advertised to young individuals and accepted them as patrons in their bar, in a very high crime neighborhood, on a block known for having many prior shootings, and did not provide adequate metal detectors or security guards at the entrance to the Bar to prevent individuals from entering the bar with guns. Defendants did this in spite of the fact that alcohol would be served in their establishment, increasing the risk of disagreements, physical fights, and

26

shootings between patrons. Defendants conduct was especially outrageous because they allowed no less than four (4) guns into the Bar on the night in question and while Plaintiff was present. None of these guns belonged to employees, security, or staff of The Art Gallery Bar; instead, they were all carried by individual patrons.

84.    As a direct and legal result of the wrongful conduct and/or omissions of Defendants, and each of them, Plaintiff suffered, and continue to suffer, the injuries and damages hereinabove set forth.

85.    In doing the wrongful and intentional acts alleged herein, Defendants acted with oppression, fraud, and malice and with conscious and willful disregard for the health, safety, and general welfare and rights of Plaintiff. Such action was done with malice, oppression, and/or fraud and was and is despicable, shocking, and offensive and entitles Plaintiff to an award of punitive damages against Defendants in amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

86.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

87.    As set forth above, the actions of Defendants were negligent.

88.    As a direct and legal result of Defendants' negligent actions, Plaintiff suffered serious emotional distress in the form of incredible suffering, fright, anguish, grief, worry, shock, humiliation and shame.

89.    Defendants' negligence was a substantial factor in causing Plaintiff serious emotional distress. Plaintiff emotional distress was a direct result of Defendants' negligence, which caused Plaintiff Berte to sustain multiple gunshots wounds, an amputated leg, coma, months of stay in multiple hospitals, physical injury and suffering which caused Berte to be forced to use a colostomy bag, and other emotional distress, in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**

**MAINTENANCE OF A PUBLIC NUISANCE AND REQUEST FOR INJUNCTIVE**

**RELIEF**

**(Against All Defendants)**

90.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

91.    Plaintiff brings this action pursuant to California code of Civil Procedure §731 to abate a public nuisance. This action is also brought under Oakland Municipal Code Chapter 15.08 and under CC §3479.

92.    Defendants' maintenance of The Gallery Art Bar constitutes a continuing public nuisance. (CA. Civ. Code §§ 3479, 3480). That is, Defendants' failure to maintain The Gallery Art Bar adversely effects not only the City of Oakland, which must maintain public works, but also the surrounding community. The continuous and unabated violent atmosphere, lack of security, and gathering place for dangerous criminals continues to cause injury to health, offense to the senses, and danger to life, and unlawfully undermines, degrades, and obstructs the free use of the public streets as well as neighboring properties.

93.    Defendants' maintenance of The Gallery Art Bar in the condition described in this complaint is a continuing public nuisance as described in Oakland municipal code including but not limited to §§ 15.08.340B, C, and D and 15.08.170 and California Civil Code §§ 3479 and 3480 and is a nuisance per se.

94.    Defendants' were notified of the dangerous condition of the property as early aS 2017 and possibly earlier. Multiple prior incidents of shootings occurred on the same block within the past four (4) years. Despite this knowledge, Defendants have failed to abate these hazardous conditions with the result being the public nuisance that exists today.

95.    Unless stopped by this Court, Defendants will continue to maintain The Art Gallery Bar in the above-described substandard and dangerous condition and continue to cause irreparable injury to the public's health, safety, and welfare.

96.    Plaintiff has no adequate remedy at law.

97.    Plaintiff is informed and believes that Defendants will not correct these violations or abate the nuisance within a reasonable period of time.

98.    Plaintiff is likely to prevail on the merits of his demand for injunctive relief for at least four (4) reasons: (a) the vast number of shootings at or near The Gallery Art Bar; (b) Defendants, and each of them, have consistently violated orders from the ABC and the City of Oakland, and now judicial intervention is necessary; (c) it is particularly outrageous that the Bar should continue to operate in light of the management decision to use untrained and unskilled homeless people as security officers; and (d) as confirmed in this pleading, Defendants, and each of them, violated their own obligations that they themselves promised the City of Oakland and the ABC that they would maintain.

99.    Therefore, Plaintiff seeks equitable relief from the Court, including but not limited to a declaration that The Gallery Art Bar is a public nuisance.

## EIGHTH CAUSE OF ACTION

### ASSAULT

### (Against DOE Assailant only)

100.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

101.    As indicated previously in this Complaint, the unknown assailant, either intentionally or negligently discharged a firearm, injuring Plaintiff in an amount to be proven at trial.

102.    To date, the person that discharged a weapon at The Gallery Art Bar is unknown.

103.    That person has either negligently or intentionally assaulted Plaintiff.

## NINTH CAUSE OF ACTION

### VIOLATION OF PECULIAR RISK DOCTRINE

### (Against All Defendants)

104.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

105.    California courts have long realized that, under the peculiar risk doctrine, a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others.

106.    The Badelle Defendants and the Yoon Defendants, and each of them, were responsible for creating the peculiar risk which was The Gallery Art Bar.

107.    Such peculiar risk was evidence in the Badelle Defendants' and Yoon Defendants' business long before Plaintiff ever entered the Bar on the evening of April 17, 2021.

108.    On information and belief, such peculiar risks were in place in the Bar prior to Plaintiff ever going to the Bar. Also, those peculiar risks were evident at the time of the incident.

109.    CACI 3078 provides that a special risk of harm is a recognizable danger that arises out of the nature of the work or the place where it is done and requires specific safety measures appropriate to the dangers. A special risk of harm may also rise out of a planned but unsafe method of doing work.

110.    The elements of the tort of peculiar risk doctrine are met with the factual allegations herein.  Namely, (a) that the work of bouncers, lighting, and security involved a special risk of harm; (b) that the Badelle Defendants and Yoon Defendants, and each of them, knew or should have known the work was likely to involve risk; (c) that the homeless security guards failed to use reasonable care to take specific safety measures appropriate to the danger to avoid the risk; and (d) that the homeless security guard's action was a cause of harm to Plaintiff, and Plaintiff was harmed in an amount to be proven at trial.

## **TENTH CAUSE OF ACTION**

### **NEGLIGENT UNDERTAKING**

#### **(Against All Defendants)**

111.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

112.    CACI 450C provides jury instructions for negligent undertaking.

113.    Each element of the separate tort of negligent undertaking has been accomplished by Defendants here. From their creation of a "shooting gallery" instead of an art gallery, to each of the management techniques articulated by the Badelle Defendants and Yoon Defendants, through the Badelle and Yoon Defendants inability to safely and promptly allow emergency personnel into The Gallery Art Bar after the shooting, were a proximate cause of Plaintiff's harm, which will be proven at trial.

## ELEVENTH CAUSE OF ACTION

### FRAUD

#### (Against All Defendants)

114.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

115.    Fraud is the intentional misrepresentation, deceit, or concealment of a material fact, with the intention of depriving Plaintiff of property or of a legal right, or otherwise to cause Plaintiff's injury.

116.    As alleged herein, the Badelle Defendants and Yoon Defendants, and each of them, committed fraud on their applications for a liquor license from the ABC and planning at the City of Oakland.

117.    In addition, the Badelle and Yoon Defendants, and each of them, failed to disclose to Plaintiff their unique management style as outlined in this Complaint, such as hiring the homeless to be security guards, or deliberately alienating local police.

118.    Plaintiff was proximately harmed by all of the deceptions by Defendants, and damaged in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION

### NEGLIGENCE

#### (Against City of Oakland only)

119.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

31

FIRST AMENDED COMPLAINT

120.    Over the course of applications, Defendant City of Oakland knew or should have known that providing and maintaining license to such persons as the Badelle Defendants and Yoon Defendants, who consistently and religiously thwarted notices of non-compliance, was likely to cause a public nuisance and does cause a public nuisance. Yet the City of Oakland never shut down this nuisance. If they had, as the law requires they do, Plaintiff would not have been injured.

121.    The negligence of the City of Oakland was a proximate cause of Plaintiff's injuries, as will be proven at trial.

## THIRTEENTH CAUSE OF ACTION

## NEGLIGENCE

## (Against ABC only)

122.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

123.    Over the course of applications, Defendant ABC knew or should have known that providing and maintaining a license to sell alcoholic beverages to such persons as the Badelle Defendants and Yoon Defendants, who consistently and religiously thwarted notices of non-compliance, was likely to cause a public nuisance and does cause a public nuisance. Yet the ABC provided a license to sell alcoholic beverages to the Badelle and Yoon Defendants, and allowed them to maintain their license despite the dangerous environment and regular gunshots at or near the Bar. But for the provision of a license to sell alcoholic beverages to the Badelle and Yoon Defendants, Plaintiff would not have been injured.

124.    The negligence of the ABC was a proximate cause of Plaintiff's injuries, in an amount to be proven at trial.

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF BUS. & PROF. CODE §24200(a)**

**CONDITIONS CONTRARY TO PUBLIC WELFARE & MORALS**

**(Against Badelle Defendants and Yoon Defendants)**

125.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though fully set forth herein.

126.    The facts alleged in paragraphs 127 to 145 below are all confirmed by the California Department of Alcoholic Beverage Control ("ABC") Investigation Report Number 21-40-047, which is attached hereto as **Exhibit B**.

127.    The Oakland Police Department ("OPD") received calls for service specifically related to the premises address of The Gallery Art Bar ("the Bar"), located at 310 14th Street, Oakland, CA 94612, eleven (11) times between August 16, 2020 and October 15, 2021.

128.    On August 16, 2020, OPD received a call for service to the Bar related to Covid-19 Public Health concerns.

129.    On March 13, 2021, OPD received a 911C call for service to the Bar.

130.    On March 28, 2021, OPD received a call for service to the Bar for a violation of PC 415, Disturbing the Peace, based on a verbal altercation.

131.    On April 3, 2021, OPD received a call for service to the Bar related to Covid-19 Public Health concerns.

132.    On April 5, 2021, the Alcoholic Beverage Control Bay Area Enforcement Office received a complaint regarding disorderly activities occurring at the premises of The Gallery Art Bar.

133.    On April 9, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

134.    On April 10, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

135.    On April 11, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

136.    On April 12, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

137.    On April 17, 2021, OPD received a call for service to the Bar due to a violation of PC 245(a)(2), Assault on a Person with a Firearm, and a violation of PC 487, Grand Theft. This call for service to the Bar was based on the shooting of Plaintiff herein in the incident that is the subject of this complaint.

138.    On July 3, 2021, plainclothes officers visited The Gallery Art Bar and determined it to be in violation of condition number 3 of the Bar's provisional license, which reads: "Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17."

139.    On July 25, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

140.    On October 8, 2021, OPD received a call for service to the Bar due to a violation of PC 415, Disturbing the Peace, based on a music party.

141.    On October 9, 2021, plainclothes officers visited The Gallery Art Bar and determined it to be in violation of condition number 3 of the Bar's provisional license, which reads: "Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17."

142.    On October 16, 2021, plainclothes officers visited The Gallery Art Bar and determined it to be in violation of condition number 3 of the Bar's provisional license, which reads: "Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17."

143.    The California Department of Alcoholic Beverage Control ("ABC") investigated The Gallery Art Bar and issued its report number 21-40-047 on the investigation on February 16, 2022. That report found that between August 16, 2020 and October 15, 2021, the Bar operated in a manner contrary to public welfare.

144.    The ABC determined that the incidents occurring at the premises of The Gallery Art Bar along with repeated complaints from civilians indicated that the licensee

(Defendant Brett Badelle) did not have the means to operate The Gallery Art Bar in a controlled manner. As such, it was in violation of Bus. & Prof. Code §24200(a), Conditions Contrary to Public Welfare & Morals, which establishes that objectionable conditions that constitute a nuisance include disturbance of the peace, public drunkenness, drinking in public, harassment of passersby, gambling, prostitution, loitering, public urination, lewd conduct, drug trafficking, or excessive loud noise. The Gallery Art Bar was investigated by the ABC for numerous incidents under Bus. & Prof. Code §24200.

145.    The ABC further determined The Gallery Art Bar's repeated failure to adhere to the instituted conditions on its alcoholic beverage license were a violation of Bus. & Prof. Code §23804: Violation of Conditions.

146.    Maintaining their Bar in such a condition contrary to public welfare and morals was a proximate cause of the injuries that will be established at trial.

## PRAYER

1.    Wherefore, Plaintiff requests judgment against Defendants, and each of them, for the following:

1.    General damages according to proof;

2.    Special damages according to proof;

3.    Prejudgment interest according to proof;

4.    Cost of suit;

5.    Declaratory relief on nuisance cause of action;

6.    For all other relief that the Court deems appropriate.

7.    Punitive damages on intentional causes of action.

DATED:  September 8, 2022          **SIEGAL & RICHARDSON, LLP**

By: _____

Joel H. Siegal

**Attorney for Plaintiff**

35

FIRST AMENDED COMPLAINT

**PROOF OF SERVICE**

I am employed in the County of Alameda, State of California. I am over the age of 18, and not a party to the within action. My business address is SIEGAL & RICHARDSON, LLP, 436 14th Street, Suite 1106, Oakland, CA 94612. On the date below, I served the foregoing document(s) described as:

**FIRST AMENDED COMPLAINT; EXHIBITS A-B**

By sending a true copy thereof to the address listed below:

**SEE ATTACHED SERVICE LIST**

☐      **By Messenger Service.** I served the documents by providing them to a professional messenger service for personal service.

☐      **By Overnight Delivery.** I deposited a sealed envelope containing a true and correct copy of the documents listed above for overnight delivery and with the postage fully prepaid.

☑      **By E-Mail or Electronic Transmission.** I caused the documents to be sent to the persons at the email address listed above in a PDF file, and the transmission appeared to be successful.

☐      **By United States Mail.** I deposited a sealed envelope containing a true and correct copy of the documents listed above with the United States Postal Service with the postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Oakland, California.

☐      **By Fax Transmission.** I faxed the documents to the persons at the fax number listed above, and the transmission appeared to be successful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 8, 2022 at Oakland, California.

_____
Laura A. Bandler

1

## SERVICE LIST

2

3
***Counsel for Brett Badelle; Fabian and Badelle LLC dba 310 Gallery; The Gallery Art Bar; and The Badelle Group Inc.***

4
Omar S. Anorga

5
155 North Lake Avenue, Suite 800
Pasadena, CA 91101

6
omar@anorgalaw.com

7
***Counsel for Jane Yoon (professional Realty Pro); JY Athol, LLC; Jane HJ Yoon***

8
***Foundation; and JY 14th Street LLC***

9
David Semel
FRIED, WILLIAMS & GRICE CONNOR

10
625 Market Street, 4th Floor
San Francisco, CA 94105

11
dsemel@friedwilliams.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A







# EXHIBIT B

State of California
**INVESTIGATION REPORT**

Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3 PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 1 of 8 |

4. CODE SECTIONS INVESTIGATED (Section number and title)
24200(a) BP – Conditions Contrary to Public Welfare & Morals (Law Enforcement Problem)
23804 Business & Professions Code – Violation of Conditions

| 5. DAY/DATE/TIME OF INCIDENT | 6. LOCATION OF INCIDENT |
|---|---|
| August 16, 2020 to October 15, 2021 | 310 14TH St., Oakland, CA 94612 |

CODE: L – Licensee; E – Employee; V – Victim; W – Witness; S – Suspect; O – Other

| 7. CODE | 8. NAME (Last, first, middle) | 9. TELEPHONE NUMBER |
|---|---|---|
| L | BADELLE, Brett Edward | (510) 368-2342 |

| 10. HOME ADDRESS | 11. OTHER ADDRESS |
|---|---|
| | brett@badelle.com / 310 14th St., Oakland, CA 94612 |

| 12. RACE | 13. SEX | 14. BIRTHDATE | 15. AGE | 16. APPARENT AGE | 17. HAIR | 18. EYES | 19. HEIGHT | 20. WEIGHT |
|---|---|---|---|---|---|---|---|---|
| B | M | | 37 | N/A | BLK | BRN | 5-08" | 175 lb |

| 21. OPERATOR'S LICENSE NUMBER | 22. CLOTHING DESCRIPTION |
|---|---|
| | N/A |

23. MISCELLANEOUS INFORMATION
Officer and Stockholder of The Badelle Group, Inc.

**VEHICLE**

| 24. LICENSE | 25. STATE | 26. YEAR | 27. MAKE | 28. MODEL | 29. COLOR |
|---|---|---|---|---|---|
| N/A | | | | | |

| 30. REGISTERED OWNER | 31. ADDRESS |
|---|---|
| | |

**32. SUMMARY OF REPORT**

Between August 16, 2020 and October 15, 2021, The Oakland Galleria ("The Gallery Art Bar"), located at 310 14th St. in the city of Oakland (Alameda County), operated in a manner contrary to public welfare. The premises repeatedly burdened Oakland Police Department resources.

On the recorded dates and times, Department Agents investigated complaints to ensure compliance with the Alcoholic Beverage Control Act at The Oakland Galleria. Department Agents determined the premises was in violation of 23804 B&P-Violation of Conditions, regarding audible entertainment beyond the premises area of control.

| *ABC USE ONLY* | | | |
|---|---|---|---|
| LICENSEE NAME | | DBA | |
| BADELLE GROUP INC, THE | | The Oakland Galleria | |
| PREMISES ADDRESS | | LICENSE NUMBER | BUSINESS PHONE NUMBER |
| 310 14th St., Oakland, CA 94612 | | 48-573982 | On File |
| INVESTIGATOR/ID | OFFICE/UNIT | SUPERVISOR/ID | DATE |
| K. Johnson #1274 | BAEO-Concord | | 2/16/22 |
| SIGNATURE | DATE | ROUTING | |
| | 2/14/21 | FORWARD FOR ADMIN FILLING | |

ABC-333 (01/02)

State of California
**INVESTIGATION REPORT**
California


Department of Alcoholic Beverage Control

| | 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3 PAGE |
|---|---|---|---|
| | 21-40-047 | CON-10111765 | 2 of 8 |

CODE: L – Licensee; E – Employee; V – Victim; W – Witness; S – Suspect; O – Other

| 7. CODE | 8. NAME (Last, first, middle) | | | | | | 9. TELEPHONE NUMBER | | |
|---|---|---|---|---|---|---|---|---|---|
| E-1 | FABIAN, Julian | | | | | | (510) 472-9152 | | |

| 10. HOME ADDRESS | | | | | 11. OTHER ADDRESS | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | 310 14th St., Oakland, CA 94612 | | | | |

| 12. RACE | 13. SEX | 14. BIRTHDATE | 15. AGE | 16. APPARENTAGE | 17. HAIR | 18. EYES | 19. HEIGHT | 20. WEIGHT |
|---|---|---|---|---|---|---|---|---|
| B | M | 04/16/1985 | 36 | N/A | BLK | BRN | 6'00" | 189 lb. |

| 21. OPERATOR'S LICENSE NUMBER | 22. CLOTHING DESCRIPTION |
|---|---|
| | |

23. MISCELLANEOUS INFORMATION
Manager on-duty on October 16, 2021.

CODE: L – Licensee; E – Employee; V – Victim; W – Witness; S – Suspect; O – Other

| 7. CODE | 8. NAME (Last, first, middle) | 9. TELEPHONE NUMBER |
|---|---|---|
| O-1 | K. Johnson #1274 | (925) 602-7715 |

| 10. HOME ADDRESS | 11. OTHER ADDRESS |
|---|---|
| Department of Alcoholic Beverage Control | 1800 Sutter St., Ste 400, Concord, CA 94520 |

| 12. RACE | 13. SEX | 14. BIRTHDATE | 15. AGE | 16. APPARENTAGE | 17. HAIR | 18. EYES | 19. HEIGHT | 20. WEIGHT |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| 21. OPERATOR'S LICENSE NUMBER | 22. CLOTHING DESCRIPTION |
|---|---|
| | |

23. MISCELLANEOUS INFORMATION
Reporting Agent- BAEO

CODE: L – Licensee; E – Employee; V – Victim; W – Witness; S – Suspect; O – Other

| 7. CODE | 8. NAME (Last, first, middle) | 9. TELEPHONE NUMBER |
|---|---|---|
| O-2 | D. Louie #1148 | (925) 602-7715 |

| 10. HOME ADDRESS | 11. OTHER ADDRESS |
|---|---|
| Department of Alcoholic Beverage Control | 1800 Sutter St., Ste 400, Concord, CA 94520 |

| 21. OPERATOR'S LICENSE NUMBER | 22. CLOTHING DESCRIPTION |
|---|---|
| | |

23. MISCELLANEOUS INFORMATION
Assisting Agent- BAEO

CODE: L – Licensee; E – Employee; V – Victim; W – Witness; S – Suspect; O – Other

| 7. CODE | 8. NAME (Last, first, middle) | 9. TELEPHONE NUMBER |
|---|---|---|
| O-3 | J. Sena #8375 | (510) 777-3333 |

| 10. HOME ADDRESS | 11. OTHER ADDRESS |
|---|---|
| Oakland Police Department | 455 7th St, Oakland, CA 94607 |

| 21. OPERATOR'S LICENSE NUMBER | 22. CLOTHING DESCRIPTION |
|---|---|
| | |

23. MISCELLANEOUS INFORMATION
Officer- Alcohol Beverage Action Team

ABC_0187



State of California

**INVESTIGATION REPORT**

⌣ Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3. PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 3 of 8 |

## ATTACHMENTS:

1. ABC-320, Evidence/Property Receipt/Report. Pages 1-3.
2. ABC-172, Petition for Conditional License (ABC Conditions). Pages 1-2.
3. ABC-257, Licensed Premises Diagram/Planned Operation (Retail). Pages 1-2.
4. Listings of Oakland Police Department Computer-Aided Dispatch (CAD) calls for service to the area of The Oakland Galleria for the period of August 2020 to October 2021. Pages 1-20.
5. Oakland Police Department police reports for April 17, 2021 detailing events with a nexus to the licensed premises. Pages 1-25.
6. ABC-756, Notice of Violation.

## BACKGROUND:

On April 24, 2018, a Type 48 license (On-Sale General Public Premises) was issued to the Badelle Group Inc. for the premises located at 310 14th St. in Oakland (Alameda County). The name of the premises is The Oakland Galleria "The Gallery Art Bar". The business is located within the jurisdiction patrolled by the Oakland Police Department.

On June 29, 2017, licensee Brett Badelle signed a Petition for Conditional License (See attachment #2) as an "Applicant/Petitioner". The licensee thus agreed to the six imposed conditions which included the condition that no entertainment noise be audible beyond the licensed area of the premises.

On January 2, 2017, licensee Brett Badelle signed the Licensed Premises Diagram/Planned Operation (Retail) form (See attachment #3) as an "Applicant", which outlined the boundaries and operational plan for the premises.

On April 5, 2021, a complaint was received at the Alcoholic Beverage Control Bay Area Enforcement Office regarding disorderly activities occurring at the premises, particularly excessive noise.

## CIRCUMSTANCES/ INVESTIGATION:

On April 20, 2021, the Department received a report from Ofc. J. Sena (#8375) of the Oakland Police Department (OPD) Alcohol Beverage Action Team regarding a shooting and theft incident that occurred on the premises on April 17, 2021. Ofc. Sena then forwarded numerous calls for service to the premises that have caused a drain on the Oakland Police Department's resources. This information has come via documented data in the form of CAD (Computer-Aided Dispatch) printouts (See attachment #4), and police reports. Repeated incidents at a licensed premise that require a police response violate Section 24200(a) of the Business and Professions Code: Conditions Contrary to Public Welfare & Morals. I, K. Johnson (#1274), reviewed the provided information regarding law enforcement involvement with the premises.

The Oakland Police Department services a densely populated city and resources must be carefully allocated across a general population of approximately 440,646 people. To date, there are approximately 1,110 licensed

ABC_0188

State of California
**INVESTIGATION REPORT**

Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3. PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 4 of 8 |

retail businesses within Oakland that must be monitored, which is in addition to the numerous services the police department provides.

I reviewed the statistics and documentation provided by the Oakland Police Department which encompassed the timeframe from August 2020 to October 2021. The CAD printouts detail that personnel from the Oakland Police Department had calls for service specifically to the premise address eleven times during this period. Officers and/or emergency medical services personnel have responded to the premises for a number of reasons including, but not limited to assault with a firearm on a person, grand theft, noise nuisances from patrons and associated vehicles, excessive entertainment noise, public health violations, and verbal altercations. I also reviewed police reports for two critical incidents that occurred on April 17, 2021 (See attachment #5).

The following is a list of incidents that required a response and resources from the Oakland Police Department. These events are directly tied to The Oakland Galleria.

| # | Date | CAD LOP/Case # | Call Type | Result | Personnel |
|---|---|---|---|---|---|
| 1 | 8/16/20 | 200816000028 | CVD-19- Public Health | Documentation Only | Operator C14, Priority Overide |
| 2 | 03/13/21 | 210313001136 | 911C- Call for Service | Documentation Only | Unit 3A07 (+1) |
| 3 | 3/28/21 | 210328000094 | 415 PC- Verbal Altercation | Documentation Only | Unit 3A03 (+1) |
| 4 | 4/3/21 | 2104030000962 | CVD-19: Public Health | Documentation Only | Operator C02 |
| 5 | 4/9/21 | 210409001073 | 415 PC- Music Party | Documentation Only | Operator C36 |
| 6 | 4/10/21 | 210410000074 | 415 PC- Music Party | Documentation Only | Operator C43 |
| 7 | 4/11/21 | 210411001026 | 415 PC- Music Party | Documentation Only | Operator C10 |
| 8 | 4/12/21 | 210412000011 | 415 PC- Music Party | Documentation Only | Operator C87 |
| 9 | 4/17/21 | RD #21-017429 | 245(A)(2) PC-Assault on a Person with Firearm 487 PC-Grand Theft | Reports Taken | Ofc. A. Muznibi #9895 (+12) |
| 10 | 7/25/21 | 210725000043 | 415 PC- Music Party | Documentation Only | Operator C02 |
| 11 | 10/8/21 | 211008000013 | 415 PC- Music Party | Documentation Only | Operator C06 |

Oakland Police Department Report #21-017429, Primary Report with Incident Supplementals
In Summary:

On April 17, 2021, at approximately 0059 hours, a shooting occurred at 310 14th St. in Oakland. Eleven Oakland Police Department Officers responded to the scene at the Gallery Art Bar. A semi-conscious male

ABC_0189

State of California
**INVESTIGATION REPORT**

Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3. PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 5 of 8 |

victim had sustained a gunshot wound to the abdomen. The victim was taken to Highland Hospital in Oakland in critical condition. The victim was found next to bullet casings and broken glass bottles. Police interviews of witnesses on the scene revealed the dispute was between patrons and may have resulted from a bottle service or spilled beverage dispute. Witnesses reported seven gunshots fired in and out of the premises by an unknown subject with a Glock-style firearm.

Officers located and talked to licensee Brett Badelle who had been working behind the bar at the time of incident. Badelle reported hearing approximately seven gunshots. Badelle stated that he did not know the victim. Badelle reported that during the shotting, his business had a gray money box with approximately $1,500 in cash stolen. They money box had been on a counter near the premises entrance. Badelle turned over Handheld ID Scanner to the police and an OPD officer recovered the HCVR DVR to the exterior video surveillance system as evidence.

Oakland Police Department Report #21-017429 (Related Supplemental)

In Summary:

On April 17, 2021, at approximately 1739 hours, Oakland Police Department Officers J. Barabad (#9590) and Officer G. Lee (#9795) responded to a general alarm request in the 1400 block of Webster St. in Oakland. They met with a business owner who stated the shop's alarm was set off from the windows being shot. The owner stated the shooting occurred earlier that morning in the 300 block of 14th St. Two strike marks were noted in the front window.

On July 3, 2021, at approximately 0115 hours, Agent Louie (#1148) and I (Agent K. Johnson #1274), responded to the licensed premises to investigate a complaint of condition violations occurring at the premises. We were on duty and dressed in a plainclothes capacity to detect alcohol-related violations.

Upon my arrival, I heard excessive entertainment noise emanating from the premises. I took a videoclip on my Department-issued cell phone. I was located on 14th St., a busy throughway, approximately 30 feet across the street from the premises. The audible noise was a violation of condition #3 on the license which reads:

3. Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17.

Failure to adhere to instituted conditions is a violation of Section 23804 Business & Professions Code: Violation of Conditions. I exited the premises at approximately 0120 hours and later submitted the videoclip as evidence at the Bay Area Enforcement Office under case #21-40-047.

On July 9, 2021, at approximately 2150 hours, I spoke with licensee Brett BADELLE by phone. I informed BADELLE of the noise violation and that a Notice of Violation that would arrive in the mail (See attachment #6). I advised that the conditions on the premises license were to be adhered to including that no audible

ABC_0190

State of California
**INVESTIGATION REPORT**

⎯ Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3. PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 6 of 8 |

entertainment should be heard from the exterior of the premises, and that a violation of these conditions could result in action being taken against the license. BADELLE replied that he had been working with the Oakland Police Department to monitor the noise levels with sound monitoring and that he was making efforts to ensure the safety of his guests after being the victim of a crime himself (at his premises). BADELLE stated he worked with the Douglass Group to install a fence around the nearby parking lot that neighbors had been complaining about (the Department also received complaints about patrons loitering and drinking in the parking lot located at 1331 Harrison St). BADELLE and I concluded our phone call at approximately 2200 hours.

The Notice of Violation was returned unopened to the Department on August 25, 2021 via mail. On August 31, 2021 I scanned and emailed the Notice of Violation to the licensee's email address on file.

On October 9, 2021, I arrived at the premises located at 310 14th St. at approximately 0025 hours. I was on duty and dressed in a plainclothes capacity to detect alcohol-related violations. The premises was open and operating with security present. I heard excessive entertainment noise emanating from the premises. I took an audio clip across the street from the premises, approximately 60 feet away. I recorded the excessive noise and later submitted it as evidence. This was a violation of condition #3 on the license which reads:

3. Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17.

I exited the premises at approximately 0040 hours.

On October 16, 2021 I arrived at the premises at approximately 0020 hours where I met with Agent Louie. We were on duty and dressed in a plainclothes capacity. We wore facial mask coverings as a COVID-19 precaution. Agent Louie had recorded an audio clip of excessive entertainment noise emanating from the premises shortly before I arrived. Agent Louie recorded the audio clip across the street from the premises, approximately 70 feet away. This was an additional violation of condition #3 on the license which reads:

3. Entertainment provided shall not be audible beyond the area under the control of the licensee(s) as defined on the ABC-257 dated 01-02-17.

To investigate the complaint of the premises using promoters, a violation of conditions, Agent Louie asked security at the entrance to the premises if there was an event occurring that night. The security guard replied that there was not. Shortly after conferring with Agent Louie, I approached the premises. I heard excessive entertainment noise emanating from inside the business as I walked on 14th St. I observed approximately 50 patrons inside the main ground floor room, drinking alcoholic beverages and dancing to loud entertainment music played by a disc jockey. I stood in line while security checked patrons and then displayed my Department-issued credentials to a security guard at the front entrance. I requested to speak to the manager.

The Oakland Galleria manager Julian FABIAN, identified by his California Driver License #D3567191 (D.O.B.), came outside to speak with me in front of the premises. I identified myself as an agent with the

ABC_0191

State of California
**INVESTIGATION REPORT**

⟍⟋ Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3 PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 7 of 8 |

Department of Alcoholic Beverage Control. FABIAN introduced himself as the on-duty manager who works most weekends. FABIAN stated he had been working at the business since the previous July and that the licensee Brett BADELLE was out of town at the time of my visit.

I handed a printout of the alcoholic beverage license conditions to FABIAN and advised him that the presented conditions must be adhered to. I emphasized the need to come into immediate compliance so that the audible entertainment did not exceed the licensed area. I advised of complaints received regarding the premises and that excessive noise was having a negative impact on the neighborhood.

FABIAN stated that the Oakland Fire Department advised the premises to leave the front door open for safety purposes. The open door made it difficult to contain the noise. FABIAN stated that he would lower the music. I advised FABIAN to inform staff and management of the noise complaints and that the Department would revisit to check for repeated violations. I stated that local ordinances must be adhered to as well. FABIAN agreed to comply.

During my visit to the premises, I checked with two security guards at the entrance to ensure that they were in possession of Department of Consumer Affairs guard cards, in compliance with condition #4 on the license. Both security guards were able to produce their respective guard cards. I noted that the entertainment noise was reduced as I left the premises. I concluded my investigation at approximately 0050 hours and exited the area without further incident.

### CONCLUSION:

The repeated failure of The Oakland Galleria to adhere to instituted conditions on the alcoholic beverage license is a violation of Section 23804 Business & Professions Code: Violation of Conditions.

Based on the type and number of documented incidents occurring at The Oakland Galleria, it is apparent that the premise has caused a drain on the Oakland Police Department resources. The Oakland Police Department responds to calls, with multiple officers, for service at this location and conduct checks to prevent criminal acts or misconduct from occurring. Consequently, the service that the Oakland Police Department needs to provide to the rest of the city is adversely impacted. This negative impact inhibits the ability of the officers and other emergency personnel to respond to calls in a timely manner when other area citizens need assistance.

The incidents occurring at the premises along with repeated complaints from civilians indicate that the licensee does not have the means to operate this establishment in a controlled manner; The Oakland Galleria is thus in violation of Section 24200(a) BP: Conditions Contrary to Public Welfare & Morals (Law Enforcement Problem). Section 24200(a) BP establishes that "objectionable conditions that constitute a nuisance" includes disturbance of the peace, public drunkenness, drinking in public, harassment of passersby, gambling, prostitution, loitering, public urination, lewd conduct, drug trafficking, or excessive loud noise. The Oakland Galleria was investigated for numerous incidents under this section.

ABC_0192

State of California
**INVESTIGATION REPORT**

Department of Alcoholic Beverage Control

| 1. REPORT NUMBER | 2. ASSIGNMENT NUMBER | 3. PAGE |
|---|---|---|
| 21-40-047 | CON-10111765 | 8 of 8 |

It should be noted that the Department continually received complaints from neighbors alleging disorderly activities at the premises throughout the time of investigation.

END OF REPORT.

ABC_0193

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT F**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW



October 3, 2022


Brett Badelle
The Badelle Group, Inc.
3435 Henrietta St.
Oakland, CA  94601

State National Insured: Brett Badelle / The Badelle Group, Inc.
Next Claim No: NXTC-CAGL-Q4Y9WW
Date of Loss: April 17, 2021
Claimant:  Mamoud Berte
Location of Loss: 310 14th St., Oakland, CA  94612

Dear Mr. Badelle:


This letter informs you of State National Insurance / Next Insurance's current position regarding coverage for The Badelle Group, inc. as it relates to the claim(s) asserted and the lawsuit filed by Mamoud Berte.

State National Insurance provided a general liability policy to Brett Badelle / The Badelle Group, Inc. under policy number NXTBF5S45G-00-GL with effective dates of April 5, 2021 through April 5, 2022.  It carries liability limits of $1,000,000 per occurrence / $2,000,000 aggregate.

THIS LETTER IS TO MAKE YOU AWARE THAT THERE ARE ISSUES THAT MAY AFFECT COVERAGE AS IT APPLIES TO THE CLAIM CAPTIONED ABOVE.

After reviewing the allegations, it appears damages stem from a shooting incident at your bar. Please be advised that indemnification may not be available for the relief sought in the lawsuit as there are exclusions on the policy for assault and battery, non-compensatory damages, and for firearms.  Please know these types of allegations and damages may not be covered under your Commercial General Liability policy due to the exclusionary language.

Given there are numerous allegations which may not be covered under your policy as listed above, we must provide you notice that further handling of this claim will be done so under a



full Reservation of Rights under the policy and at law to disclaim coverage in whole, or in part, as warranted by the facts of this case. Attached you will find the relevant policy language.

Please know, Next Insurance will continue to investigate the facts regarding the alleged incident even though coverage questions exist. Nothing that we may do by investigating, entering into your defense, or otherwise, should be construed by you or anyone else as confirmation of coverage or as a waiver or estoppel on the part of Next Insurance to rely upon any and all applicable coverage defenses now or in the future.

Next Insurance may have no duty to indemnify for these and other reasons that may become known. We further reserve rights under the Policy and applicable law to cite additional policy provisions and coverage defenses as may be appropriate. Again, this letter should not be construed as a waiver of any known or unknown defense that we may have under the Policy, nor does this letter waive or change any provisions or conditions in the Policy.

 The policy contains the following relevant language:


# EXCLUSION – ASSAULT AND BATTERY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following is added to **SECTION I - COVERAGES, COVERAGE A** - **BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions**:

**Assault and Battery**

"Bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery." This exclusion applies regardless of the degree of culpability or intent and without regard to:

**(1)** Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly:

**(a)** At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants;
**(b)** By the insured's customers, patrons, or guests;
**(c)** By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or
**(d)** By any other person or entity, by any means or cause whatsoever;



**(2)**  The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers", agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

**(3)**  The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

**(a)**  Prevent, bar, suppress, or halt an "assault and battery" by any person;
**(b)**  Provide an environment safe from an "assault and battery" by any person; or
**(c)**  Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery":

**(a)** Emotional injury or distress;

**b)** One or more of loss of society, companionship, services, consortium, and income;

**(c)** Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or

**(d)** Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "bodily injury" or "property damage."

**B. SECTION I - COVERAGES, COVERAGE A** - **BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions,** exclusion **a. Expected Or Intended Injury** is replaced by the following:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**C.** The following is added to **SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions**:

**Assault and Battery**

"Personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery." This exclusion applies regardless of the degree of culpability or intent and without regard to:



**(1)**  Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly, or indirectly:

**(a)**  At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents, or servants;
**(b)**  By the insured's customers, patrons, or guests;
**(c)**  By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or
**(d)**  By any other person or entity, by any means or cause whatsoever;

**(2)**  The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers", agents, or servants, in the hiring, employment, investigation, training, supervision, retention, placement, or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

**(3)**  The act, error, or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

**(a)**  Prevent, bar, suppress, or halt an "assault and battery" by any person;
**(b)**  Provide an environment safe from an "assault and battery" by any person; or
**(c)**  Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "personal and advertising injury" arising from, or caused in whole or in part by, an "assault and battery":

**(a)**  Emotional injury or distress;
**(b)**  One or more of loss of society, companionship, services, consortium, and income;
**(c)**  Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or
**(d)**  Any obligation to share damages with or repay a person who, or an entity that, must pay damages because of the "personal and advertising injury."

**D. SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, Paragraph **2. Exclusions,** exclusion **a. Knowing Violation Of Rights Of Another** is replaced by the following:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" expected or intended from the standpoint of, or caused by or at the direction of, the insured. This exclusion applies regardless of the presence or absence of knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."



**E.** The following is added to **SECTION V - DEFINITIONS**:

"Assault and battery" means one or more of the following:

**a.** Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence;

**b.** Harmful or offensive contact between or among two or more persons;

**c.** Apprehension of harmful or offensive contact between or among two or more persons;

**d.** Threats or abuse by words, acts, gestures, or deeds;

**e**. Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and

**f.** Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) **a., b., c., d**., or **e**. Above.

All other terms and conditions of the policy remain unchanged.

# EXCLUSION – NON-COMPENSATORY DAMAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

**PUNITIVE DAMAGES**

**This insurance does not apply to any claim for or awards of non-compensatory damages, including, but not limited to:**

1. Punitive, exemplary or multiple damages;

2. Equitable or non-pecuniary relief; or

3. Fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.

   All other terms and conditions of the policy remain unchanged.



# EXCLUSIONS APPLICABLE TO SPORTS/LEISURE/ENTERTAINMENT ACTIVITIES AND DEVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

## I. EXCLUSIONS

Any exclusion for which an "X" appears is added to **SECTION I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **2. Exclusions** and to **SECTION I – COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY**, paragraph **2. Exclusions**:

…

## _x__Firearms, Fireworks and Other Pyrotechnic Devices

"Bodily injury", "property damage" or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take-down or other use of:

1. Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices;

2. Fireworks, including firecrackers, Roman Candles, pinwheels skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these

…

## II. DEFINITION

For purposes of this endorsement, the following definitions are added to **SECTION V - DEFINITIONS**:

A. "Inflatable promotional device" means any inflatable device or equipment used for advertising or promotional purposes, including but not limited to, any hot air balloon or inflatable signage.
B. "Mosh pit" means the area in front of the stage where attendees are allowed to freely gather during a performance and/or event.
C. "Participant" means any person while instructing, supervising, training or practicing for, participating in or while otherwise involved in any sports or athletic activity, contest, or exhibition. "Participant" does not include any spectator.
D. "Sports trainer" means a trainer employed by the insured or working on the insured's behalf who carries



out the practice of prevention and/or rehabilitation of injuries incurred by athletes.

**E.** "Stunting Activity", means any feat or activity requiring special strength, skill, equipment, device or daring.

All other terms and conditions of the policy remain unchanged.

Unless NEXT hears to the contrary from you or your authorized representative, it will be assumed that you understand and agree to proceed under this full and complete reservation of rights. Under those circumstances, NEXT will continue its investigation and handling of the claim on the condition that no acts or actions by NEXT will constitute a waiver of any rights had now, in the past, or in the future by NEXT.

Please feel free to contact the Advocate listed below if there are any concerns or questions regarding this Reservation of Rights.

Sincerely,

Gary Eddy
Claims Specialist
512-668-6955

**California:** For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT G**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW



October 20, 2022

**Via Electronic Mail**
**Followed By Certified Mail / Return Receipt Requested**


Brett Badelle
The Badelle Group, Inc.
3435 Henrietta St.
Oakland, CA  94601

State National Insured: Brett Badelle / The Badelle Group, Inc.
Next Claim No: NXTC-CAGL-Q4Y9WW
Policy Number:  NXTBF5S45G-00-GL
Case:  Berte, et al. v. Yoon, et al.
Venue:  Alameda County Superior Court, Case # 21CV003753


<u>**SUPPLEMENTAL RESERVATION OF RIGHTS/NON-WAIVER**</u>

Dear Mr. Badelle:


As you know, based on the tender of the First Amended Complaint (the "FAC"), State National Insurance Company ("State National") is currently defending you and The Badelle Group, Inc. ("Badelle Group") under the policy of insurance listed above (the "Policy") in the above-referenced *Berte* action (the "*Berte* Lawsuit"), subject to a full and complete reservation of rights.  The following will supplement State National's October 3, 2022 reservation of rights letter, which is incorporated by reference as though fully set forth herein.  Please be advised, however, that this coverage position letter highlights and supplements, but does not replace, State National's October 3, 2022 reservation of rights letter.

As further explained below, based on the recently filed FAC and the allegation that the "unknown assailant mishandled a semiautomatic firearm negligently causing it to discharge at least 10 rounds that struck Plaintiff Berte" (FAC, ¶ 31), State National agrees to defend you and Badelle Group in the *Berte* Lawsuit under the Policy from the date of the filing of the FAC (*i.e.,* from September 8, 2022) forward, subject to a full and complete reservation of rights.



**1.**    <u>FACTUAL BACKGROUND</u>

Please note that this letter should not be interpreted to mean we give any credence to the claims alleged in the present matter against you or Badelle Group. For purposes of determining whether a duty to defend you and Badelle Group is owed under the Policy, we must refer to the allegations in the FAC.

**A.    The *Berte* Lawsuit.**

On or about December 8, 2021, Plaintiffs Mahmoud Berte and Tessa Reiter filed their form complaint in the *Berte* Lawsuit against, among others, you, and Badelle Group. Thereafter, on or about September 8, 2022, Plaintiff Mahmoud Berte ("Plaintiff") filed his FAC against Jane Yoon, JY Athol, LLC, Jane HJ Yoon Foundation, Fabian and Badelle LLC dba 310 Gallery, The Gallery Art Bar, JY 14th Street LLC, you, Badelle Group, California Department of Alcoholic Beverage Control, and the City of Oakland (collectively, the "Defendants").

The FAC arises out of a shooting that occurred at the Gallery Art Bar (the "Bar") on April 17, 2021, which left Plaintiff with at least ten bullet holes in his body. FAC, ¶ 1. According to the FAC, you lease the property located at 310 14th Street in Oakland, California (the "Property"), which is where the Bar is located. FAC, ¶ 13. The FAC also alleges that Badelle Group leases and/or manages the Property. FAC, ¶ 16.

The FAC describes the incident at issue as follows:

Upon exiting the bathroom and entering the hallway, Plaintiff heard several gun shots and felt pain. Plaintiff did not have an argument, dispute, disturbance, and/or fight with any other person. Thus, on information and belief, the unknown assailant mishandled a semiautomatic firearm negligently causing it to discharge at least 10 rounds that struck Plaintiff Berte. As a result, Plaintiff suffered serious personal injuries.

FAC, ¶ 31.

Additionally, the FAC contends that "[t]he firearm was fired by another patron in the bar both negligently, recklessly, and/or intentionally." FAC, ¶ 58.

As a result of the gunshot wounds, the FAC alleges that Plaintiff "has had over a dozen surgeries, his left leg has been amputated, his right leg now has significant plates and screws in it, and he must use a colostomy bag." FAC, ¶ 50. The FAC further alleges that Plaintiff has "sustained personal injuries, including hospitalizations, numerous surgeries, permanent disability, amputation of a leg, hospital bills, loss of education, loss of career opportunities, wage loss, future medical expenses, and emotional distress." FAC, ¶ 58.



The FAC alleges that Plaintiff's injuries were caused by you and Badelle Group (among other defendants) (1) hiring homeless persons to perform security duties without providing such persons with adequate training, licensing, bonding, or equipment; (2) failing to put adequate security protocols and security procedures in place such that the security guards were allowed to accept money in return for permitting patrons to bypass weapons searches; and (3) failing to maintain adequate policies or procedures for responding to foreseeable emergency medical needs of patrons in the facility, such as Plaintiff.  FAC, ¶ 32.

The FAC listed the following six "unique management ideas" employed by you and Badelle Group that allegedly contributed to Plaintiff's injuries: (1) hiring homeless persons to perform security duties (FAC, ¶ 32); (2) creating an ambience that made it difficult for emergency responders to efficiently enter the Gallery Art Bar (FAC, ¶ 33); (3) "encouraging or allowing gangbangers and other criminals to use the Bar for the restroom" (FAC, ¶ 34); (4) failing to install working security cameras (FAC, ¶ 35); (5) failing to check identification before entry (FAC, ¶ 36); and (6) failing to have warnings outside the Bar (FAC, ¶ 37).

Additionally, the FAC contends that Defendants breached their duties to Plaintiff by

allowing patrons with guns into the bar; failing to provide a safe bar; failing to conduct adequate security procedures and protocols, including failing to search the persons and purses of patrons; failing to use metal detectors to search patrons before entering the establishment; failing to operate security technology or systems; failing to prevent guns from entering the bar; and failing to enact a security policy to prevent guns from entering the bar.

FAC, ¶ 60.

The FAC asserts the following causes of action against you and Badelle Group: (1) Negligence; (2) Negligence Per Se; (3) Negligent Hiring, Supervision, and Retention; (4) Premises Liability; (5) Intentional Infliction of Emotional Distress; (6) Negligent Infliction of Emotional Distress; (7) Maintenance of Public Nuisance and Request for Injunctive Relief; (8) Violation of Peculiar Risk Doctrine; (9) Negligent Undertaking; (10) Fraud; and (11) Violation of Business and Professions Code § 24200(a) Conditions Contrary to Public Welfare & Morals.  The FAC also seeks the following forms of relief: (1) general damages; (2) special damages; (3) prejudgment interest; (4) cost of suit; (5) declaratory relief on nuisance cause of action; (6) all other relief that the court deems appropriate; and (7) punitive damages on the intentional causes of action.

### B.    The Policy.

State National issued policy number NXTBFS45G-00-GL to named insured Brett Badelle / The Badelle Group, Inc. for the policy period of April 5, 2021 to April 5, 2022.  The Policy provides a $1 million limit for each occurrence, subject to a $2 million general aggregate limit and a $2 million products/completed operations aggregate limit.



The Policy contains certain coverage forms and endorsements, including the following:

- Commercial General Liability Coverage Form (form no. CG 00 01 04 13);

- Amendment of Liquor Liability Exclusion endorsement (form number CG 21 50 04 13);

- Exclusions Applicable to Sports/Leisure/Entertainment Activities and Devices endorsement (form number NXT-0336 BM GL 0218); and

- Exclusion – Assault and Battery endorsement (form number NXT-0053 BM GL 0318)

For your convenience, we have set forth below certain provisions of the Policy. Please note, however, that this summary is not intended to supplement, amend, supersede or otherwise alter the Policy. State National does not intend to waive any of the provisions of the Policy by virtue of this summary. Please review the Policy for a complete listing of all the terms, conditions, exclusions, and definitions they contain.

2.    STATE NATIONAL'S COVERAGE POSITION UNDER THE POLICY

A.    **State National Agrees to Defend You and Badelle Group From September 8, 2022 Forward, Subject to A Reservation of Rights.**

The FAC alleges that the "unknown assailant mishandled a semiautomatic firearm negligently causing it to discharge at least 10 rounds that struck Plaintiff Berte." FAC, ¶ 31. Based on the addition of this allegation in the FAC, which was not present in the original complaint, State National agrees to defend you and Badelle Group in the *Berte* Lawsuit under the Policy from the date of the filing of the FAC (*i.e.,* from September 8, 2022) forward, subject to a full and complete reservation of rights.

B.    **The Assault and Battery Exclusion.**

The Policy includes an Exclusion – Assault and Battery endorsement (form number NXT-0053 BM GL 0318), which provides in part:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    The following is added to **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions**:

**Assault and Battery**

"Bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery."



This exclusion applies regardless of the degree of culpability or intent and without regard to:

(1)    Whether the "assault and battery" is caused or committed, or threatened to be caused or committed, each of the foregoing whether actual, alleged, directly or indirectly:

    (a)    At the instruction or direction of, or is instigated by, the insured, or the insured's officers, "employees," "volunteer workers," agents or servants;

    (b)    By the insured's customers, patrons or guests;

    (c)    By any other person on, at, or near the premises owned or occupied by the insured, whether or not such person's presence is lawful; or

    (d)    By any other person or entity, by any means or cause whatsoever;

(2)    The failure or negligence, each of the foregoing whether actual or alleged, of the insured, or the insured's officers, "employees," "volunteer workers," agents or servants, in the hiring, employment, investigation, training, supervision, retention, placement or control of any person involved or in connection with any "assault and battery," whether or not such person was or is an officer, "employee," "volunteer worker," agent, or servant of the insured; or

(3)    The act, error or failure to act, each of the foregoing whether actual or alleged, of the insured, the insured's officers, "employees," "volunteer workers," agents, or servants, or any other person for whom or entity that any insured was or is legally responsible, to:

    (a)    Prevent, bar, suppress, or halt an "assault and battery" by any person;

    (b)    Provide an environment safe from "assault and battery" by any person; or

    (c)    Warn of the dangers of the environment that could contribute to an "assault and battery" by any person.

Without limiting the foregoing and for the avoidance of doubt, this exclusion also applies to bar any and all claims by any person, entity, firm, or organization, for any of the following in connection with "bodily injury" or "property damage" arising from, or caused in whole or in part by, an "assault and battery":

(a)    Emotional distress;



(b)    One or more of loss of society, companionship, services, consortium, and income;

(c)    Reimbursement for any and all expenses or wages, paid or incurred by any person, entity, firm, or organization; or

(d)    Any obligation to share damages with or repay a person who, or any entity that, must pay damages because of the "bodily injury" or "property damage."

\* \* \*

E.    The following is added to **SECTION V – DEFINITIONS:**

"Assault and battery" means one or more of the following:

a.    Any assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence;

b.    Harmful or offensive contact between or among two or more persons;

c.    Apprehension of harmful or offensive contact between or among two or more persons;

d.    Threats or abuse by words, acts, gestures, or deeds;

e.    Acts including, but not limited to, one or more of sexual abuse, sexual harassment, sexual molestation, sexual assault, and sexual battery; and

f.    Any act or omission in connection with the prevention or suppression of any conduct described in subparagraph(s) **a., b., c., d.,** or **e.,** above.

\* \* \*

As quoted above, the Policy bars coverage for "bodily injury" arising from, or caused in whole or in part by, an "assault and battery" "regardless of the degree of culpability or intent." "Assault and battery" is defined to include, among other things, "assault, battery, intimidation, fight, altercation, misconduct, or similar incident or act of violence" and "[h]armful or offensive contact between or among two or more persons." Here, the FAC arises out of a shooting that occurred at the Bar, which left Plaintiff with at least ten bullet holes in his body. FAC, ¶ 1. Additionally, the FAC contends that the "[t]he firearm was fired by another patron in the bar both negligently, recklessly, and/or intentionally." FAC, ¶ 58. As a result, State National reserves its rights to withdraw its defense, deny coverage, and/or deny indemnity to the extent the Policy's Assault and Battery Exclusion precludes coverage.

C.    **The Firearms Exclusion.**

The Policy also includes an Exclusions Applicable to Sports/Leisure/Entertainment Activities and Devices endorsement (form number NXT-0336 BM GL 0218), which provides, in part:



This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**I.    EXCLUSIONS**

Any exclusions for which an "X" appears is added to **SECTION – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. Exclusions** and to **SECTION  I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY,** paragraph **2. Exclusions:**

* * *

 **X  Firearms, Fireworks and Other Pyrotechnic Devices**

"Bodily injury", "property damage", or "personal and advertising injury" arising from the ownership, maintenance, operation, sponsorship, set-up or take down or other use of:

1.    Firearms, including handguns, revolvers, pistols, rifles, shotguns, air guns, semi-automatic weapons and similar devices;

2.    Fireworks, including firecrackers, Roman Candles, pinwheels, skyrockets, ground displays, flares, smoke bombs and similar devices that produce, when ignited or activated, sound, smoke, motion or a combination of these

by any insured or by any person for which any Insured may be held liable in any capacity.

* * *

As quoted above, the firearms exclusion bars coverage, in part, for: (1) "bodily injury" arising from the other use of a firearm by any Insured, and (2) "bodily injury" arising from the other use of a firearm by any person for which any Insured may be held liable.  The FAC arises out of a shooting that occurred at the "Bar, which left Plaintiff with at least ten bullet holes in his body.  FAC, ¶ 1.  The FAC also alleges that "the unknown assailant mishandled a semiautomatic firearm negligently causing it to discharge at least 10 rounds that struck Plaintiff Berte," causing him to suffer "serious personal injuries."  FAC, ¶ 31.  In relation to that shooting, the FAC asserts eleven causes of action against you and Badelle Group seeking to hold you and Badelle Group liable for such shooting.  As a result, State National reserves its rights to withdraw its defense, deny coverage, and/or deny indemnity to the extent the firearms exclusion bars coverage under the Policy.

**D.    The Liquor Liability Exclusion.**



The Policy includes an Amendment of Liquor Liability Exclusion endorsement (form number CG 21 50 04 13), which replaces the CGL Form's liquor liability exclusion (exclusion "c") and provides, in part:

**2.    Exclusions**

This insurance does not apply to:

**c.    Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)**    Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises for consumption on your premises;

**(2)**    The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)**    Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against the insured allege negligence or other wrongdoing in:

**(a)**    The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)**    Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

This exclusion applies only if you:

(1)    Manufacture, sell or distribute alcoholic beverages;

(2)    Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a)    Requires a license;

(b)    Is for the purpose of financial gain or livelihood;

(3)    Serve or furnish alcoholic beverages without a charge, if a license is required for such activity; or



    (4)    Permit any person to bring any alcoholic beverages on your premises, for consumption on your premises.

* * *

Here, the shooting occurred at a bar, where State National understands alcohol was being served. As a result, State National reserves its rights to withdraw its defense, deny coverage, and/or deny indemnity to the extent the Liquor Liability Exclusion bars coverage under the Policy.

**3.**    <u>TERMS OF DEFENSE</u>

State National has hired Jason P. Tortorici of Schilleci & Tortorici, P.C. to defend you and Badelle Group in the *Berte* Lawsuit. Please cooperate with Mr. Tortorici in connection with your defense.

In addition, based on State National's reservation of rights, a possible conflict of interest may exist between you and Badelle Group, on the one hand, and State National, on the other hand, under the provisions of California Civil Code section 2860(b). Under these circumstances, section 2860(a) provides that you and Badelle Group are entitled to select your own counsel to defend you and Badelle Group in the *Berte* Lawsuit. As a result, in addition to Mr. Tortorici, State National will pay the necessary and reasonable fees incurred by independent counsel selected by you and Badelle Group for the defense of this matter, up to the rate State National normally pays for the defense of similar actions in the area where this claim arose, pursuant to the terms of this letter. Those rates are:

Partners: $275.00 per hour

Associates: $225.00 per hour

Paralegals: $125.00 per hour

If counsel selected by you and Badelle Group is unwilling to bill the case at State National's usual and customary rates, it is your and Badelle Group's responsibility to pay the difference between defense counsel's rates and the rates usually and customarily charged by State National. With respect to past and future invoices, State National will require itemized statements for all activity performed, the date, the specific time involved, the attorney performing the activity, and the hourly rate charged.

Section 2860 also requires that independent counsel confirm it has at least five years of civil litigation practice which includes substantial experience in the subject at issue in the *Berte* Lawsuit, and errors and omissions coverage.

State National will pay reasonable defense fees and costs, subject to the above reservations, incurred in the defense of you and Badelle Group in the *Berte* Lawsuit. However, please be advised



that State National will not pay any fees or costs relating to any insurance coverage action or advice or incurred in connection with any cross-claim that you or Badelle Group may file in the *Berte* Lawsuit.

1.    <u>GENERAL RESERVATION OF RIGHTS/NON-WAIVER.</u>

State National reserves all rights under the Policy and the law regarding the *Berte* Lawsuit, including but not limited to, the right to assert additional terms, conditions, definitions, exclusions, and endorsements contained in the Policy that are not otherwise addressed above.  Nothing in this letter should be read as a waiver of any rights under the Policy or any applicable law.  The inclusion of policy terms, conditions, definitions, exclusions, and endorsements in this letter is not intended as, and it is not, an exhaustive list of policy terms, conditions, exclusions or endorsements that may potentially apply to State National's coverage position under the Policy.  As this matter progresses and additional information is provided, State National reserves the right to assert additional terms, conditions, definitions, exclusions, and endorsements contained in the Policy.  Moreover, no action taken in connection with the investigation or handling of this matter, including any requests for information or documents, should be viewed as an admission of coverage under the Policy.  Any conduct of State National, its agents, attorneys or employees is without waiver of any of State National's rights and/or duties under the Policy and applicable law, including but not limited to, the rights set forth herein. State National shall not waive any of its rights unless expressly so stated in writing.

State National also reserves on the following:

1.    The right to file a declaratory relief action seeking a declaration of State National's rights and duties under the Policy regarding defense and indemnity of you and Badelle Group for the *Berte* Lawsuit;

2.    The right to seek reimbursement for any judgment or settlement monies paid for damages in connection with the *Berte* Lawsuit which are not covered under the Policies pursuant to the reservations stated;

3.    The right to withdraw from the defense of the *Berte* Lawsuit should facts or circumstances arise indicating that the instant matter presents no potential for coverage under the Policy; and

4.    The right to amend this reservation of rights letter.

Additionally, pursuant to the "other insurance" provision in the Policy, State National reserves the right to seek contribution of its defense fees and costs as well as indemnity payments, if any, from all other valid and collectible insurance which may be applicable.  If you have not done so already, we suggest you immediately notify any other insurance carriers whose coverage might apply to the present matter and ask those other carriers to participate in the defense and indemnity of the present matter.  Please send us copies of all such notification letters and any responses as well as any other



policy that may potentially provide coverage for you and/or Badelle Group with respect to the *Berte* Lawsuit.

We also wish to advise you that this matter may potentially exceed the amount of insurance potentially available under the Policy. You and Badelle Group may wish to place your excess carriers, if any, on notice of the present matter. To the extent damages are awarded in excess of the policy limits, State National is not obligated to pay such amounts.

**2.**    <u>CONCLUSION</u>

Please note that the coverage position set forth in this letter is based on the allegations in the present matter as they are currently alleged, and the information currently available to State National. State National recognizes that the allegations may be unsubstantiated and nothing in this letter is intended to suggest that the allegations have any legal or factual merit. State National will reevaluate its coverage position under the Policy if additional documentation, factual information or legal authority is submitted. Please note, however, that if any additional documentation, information or legal authority is submitted, State National reserves the right to reevaluate its entire coverage position under the Policy, not merely those portions of its coverage position that may be affected by such additional documentation, information or legal authority. In the event you have any knowledge of facts or legal authorities which you believe bear upon this coverage position, or have any other information which you believe is relevant to coverage, please provide that information to us as soon as possible so State National can consider it.

If you believe all or a part of this claim has been wrongfully denied or rejected, you may have this matter reviewed by the California Department of Insurance. The address and telephone number of the appropriate unit at the Department of Insurance is:

California Department of Insurance, Consumer Services Division
Claims Services Bureau
300 South Spring Street, 11th Floor
Los Angeles, CA 90013
Consumer Hotline: 1-800-927-4357 (HELP)

Thank you for your attention. If you have any questions or concerns with respect to this letter or State National's coverage position, please do not hesitate to contact us.

Sincerely,

Gary Eddy
Claims Specialist
512-668-6955

